BERTRAM A. DRUKER vs. STATE TAX COMMISSION.

Suffolk. November 9, 1977. — January 5, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Taxation,* Income tax, Trust. *Trust,* What constitutes.

Under G. L. c. 62, as amended by St. 1971, c. 555, § 5, a taxpayer was
   entitled to offset a negative amount of income taxable at 5% under
   § 4 (*b*), against a positive amount of income from interest, dividends,
   and net capital gains taxable at 9% under § 4 (*a*), in order to reduce or
   eliminate the taxable 9% income. [199-200] BRAUCHER, J., dissenting.
A taxpayer engaged in the real estate business who established by a dec-
   laration a trust of which he was the sole trustee and holder of a 95%
   beneficial interest, and who nearly two years later established by a
   declaration a second trust of which he was the sole trustee and sole
   beneficiary, created no true trusts, and the losses sustained by the two
   trusts were personal to the taxpayer and deductible in his personal in-
   come tax return filed pursuant to G. L. c. 62, as amended by St. 1971,
   c. 555. [200-201] BRAUCHER, J., dissenting.

APPEALS from decisions of the Appellate Tax Board.

*Terence P. O'Malley,* Assistant Attorney General, for the
State Tax Commission.

*Robert J. McGee* for the taxpayer.

LIACOS, J.   This case involves consolidated appeals taken
by the State Tax Commission (commission) from decisions
of the Appellate Tax Board (board) granting abatements of
the taxpayer's income tax for the years 1971 and 1972. We
affirm the decisions of the board.

The pertinent facts may be summarized from the board's
finding of fact and report; we will recite here only those
facts relative to the 1971 tax because the issues presented for
the two years are identical. In 1971 the taxpayer had in-
come from interest, dividends, and capital gains in the
amount of $135,576. The Commissioner of Corporations

and Taxation assessed a tax on this amount, less an exemp-
tion of $3,394, at the rate of 9% and in the amount of
$11,896.38 plus interest. See G. L. c. 62, § 4, as appearing
in St. 1971, c. 555, § 5. The taxpayer also reported net 5%
income in the negative amount of ($1,110,119) for the same
year. Included in this negative amount were a loss of
$37,415 sustained by "the Westberk Trust," a loss of
$669,548 sustained by "the Colonnade Trust," and a net
operating loss carryover from 1970 of $278,560. The tax-
payer filed petitions for abatement of the assessed 1971 tax
and the 1972 tax with the commission. Following denial of
his petitions, the taxpayer brought formal appeals to the
board, framing the following three issues: (1) was the tax-
payer entitled to offset a negative amount of 5% income
against a positive amount of 9% income in order to reduce
or eliminate the taxable 9% income; (2) was the taxpayer
entitled to the deduction for losses attributed to the "West-
berk Trust" and "Colonnade Trust"; and (3) was the tax-
payer entitled to take as a deduction a net operating loss
carryover. The board found in favor of the taxpayer on all
three issues, whereupon the commission brought this con-
solidated appeal. Only the first two issues are pressed before
us by the commission; we treat them seriatim.

First, the commission argues that there is no provision in
the income tax laws as in effect at the relevant time, G. L.
c. 62, as amended by St. 1971, c. 555 (hereinafter referred
to as c. 62), for a deduction from 9% income of losses sus-
tained in conducting a business for which the income de-
rived would be taxed at 5%. Because of the then existing
nature of c. 62, we believe this poses the wrong question.
Section 2 of that chapter begins with an inclusive definition
of gross income, § 2 (a), and then introduces the term "ad-
justed gross income" to represent gross income less allow-
able deductions, § 2 (b). Section 3 then introduces a further
refinement by defining the term "income subject to taxa-
tion" as adjusted gross income less certain exemptions. It is
not contested that the losses attributed to the two "trusts,"
as well as the other items associated with the negative 5%

income, fall within the § 2 (*b*) category of allowable deductions. Assuming that such losses are properly applied to the taxpayer as an individual rather than as trustee, an issue we shall address shortly, it is therefore clear under the scheme of §§ 2 and 3 that the income subject to taxation in this case is zero. The fact that § 4 goes on to divide "income subject to taxation" into the two categories of 5% income and 9% income is thus of no import to the computation of tax in this case. See *Barnes* v. *State Tax Comm'n,* 363 Mass. 589 (1973). We do not reach this conclusion as a matter of policy, but simply as the necessary result of the application of the unambiguous statutory language. Subsequent to the *Barnes* case, the Legislature changed the formula so that gross income is divided into the two subclasses of "Part A" and "Part B" gross income prior to the calculation of adjusted gross income. Under that revision deductions under "Part A gross income" shall not "exceed the amount of Part A gross income which is effectively connected with the active conduct of a trade or business of the taxpayer." St. 1973, c. 723, § 2, amending G. L. c. 62, §§ 2-4. Because this amendment was not effective for the tax years in question, we cannot apply retroactively the change in the statutory scheme so as to achieve the social policy results advocated by the commission and ultimately embraced by the Legislature.

The second issue argued before us is whether the taxpayer is entitled to deduct in his personal tax returns the losses experienced by the two "trusts." Some additional facts are required in making this determination. The taxpayer, at all material times, was engaged in the real estate business. By a declaration of trust dated October, 1969, he established the "Colonnade Trust" with the taxpayer as the sole trustee and holder of a 95% beneficial interest. The remaining 5% beneficial interest was held by one other individual. The taxpayer established the "Westberk Trust" by declaration of trust in June, 1971, naming himself as sole trustee and sole beneficiary. Both declarations provided, inter alia, that the trustee was to hold the property conveyed to him, and re-

ceive profits for the benefit of the beneficiaries; make distributions pursuant to the directions of the beneficiaries; and have full power, subject to the consent of the beneficiaries, to deal with the conveyed property. Except as expressly provided in the declaration, the trustee was to have "no power" to deal with the property "except as so directed by the beneficiaries." The "trusts" could be terminated at any time by the beneficiaries, at which time the trustee was to convey the assets to the beneficiaries. Based on these powers, the board found as a question of fact that the taxpayer, as 95 % beneficiary of the "Colonnade Trust," was in "complete" or "practical" control of the trust property, funds and income involved. The board therefore concluded, as matter of law, that "the extreme degree of control exercised by beneficiaries in this case is clearly inamicable [sic] with the concept of and vitiates the creation of a trust for purposes of taxation." It followed that the losses of the "Colonnade Trust" were available as deductions on the taxpayer's personal tax returns. With respect to the "Westberk Trust," the board was of the opinion that no trust was ever created because the taxpayer was the sole settlor, sole trustee, and sole beneficiary — an identity of interests fundamentally incompatible with the recognition of a trust as a separate entity. See *Kaufman* v. *Federal Nat'l Bank,* 287 Mass. 97 (1934); *Cunningham* v. *Bright,* 228 Mass. 385 (1917). Thus, the taxpayer held the property in Westberk free of any trust, and the losses associated with the Westberk business were the taxpayer's personal losses. We find no error in the board's application of the law of trusts to the facts presented by the Colonnade and Westberk "trusts." Moreover, we believe that the board has correctly distinguished the case of *Dexter* v. *State Tax Comm'n,* 350 Mass. 380 (1966), decided prior to the 1971 revision of our income tax laws, wherein the existence of the revocable trust was not questioned.

Nor does the commission's reliance on G. L. c. 62, § 10 (a), seem persuasive. The commission's claim that G. L. c. 62, § 10 (a), provides that income received by a trustee and payable to or accumulated for the benefit of

Massachusetts inhabitants is generally taxed to the trustee may be .generally valid but is inapplicable here. Where there is no trust there is no "trustee" within the meaning of that section. The conclusion that no true trusts were created in the instant case is sufficient to sustain the taxpayer's argument that the Westberk and Colonnade losses were personal to him; we need not discuss the tax consequences of a determination that a partnership or some other entity had been created.[1] Nor need we embark on a general discussion of the business or legal advantages and disadvantages of so called "nominee trusts," see Birnbaum & Monahan, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. 364 (1976). The decisions of the board granting abatements to the taxpayer in accordance with agreements as to computation are therefore affirmed.

*So ordered.*

BRAUCHER, J. (dissenting). I find G. L. c. 62, § 4, as appearing in St. 1971, c. 555, § 5, clear on its face, and the taxpayer's interpretation seems to me to be a perverse misreading. Under § 4 (*a*) interest, dividends, and capital gains were taxed at 9% if "included in the income subject to taxation." The taxpayer received such income, and it was so included. Other income, taxable at 5% under § 4 (*b*), was also included in "income subject to taxation," but the net balance of other income was negative. Most of the taxpayers of the Commonwealth understood the principle and paid their taxes accordingly, and I cannot join in a special windfall to an ingenious taxpayer who claims not to understand

---

[1] The taxpayer argues as to Colonnade that a partnership was created. See *Williams* v. *Boston,* 208 Mass. 497 (1911). The board apparently recognized this possibility by stating that "at least" 95% of the loss could be claimed by the taxpayer. No practical result is governed by this determination since even 95% of the losses of Colonnade is sufficient to preclude tax liability. Consequently, we need not discuss this question.

negative or minus numbers. I also disagree with the court's disregard of trusts deliberately set up by the taxpayer to enable him to claim that there was or was not a trust, whichever might be to his advantage.