**In re GRAND JURY PROCEEDINGS.**

**Appeal of Dr. Milton SHIFFMAN,
Defendant.**

**No. 78–5105.**

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1978.

Decided May 4, 1978.

Irwin M. Alterman, Hyman, Gurwin, Nachman, Friedman & Winkelman, Southfield, Mich., for defendant.

James K. Robinson, U. S. Atty., Detroit, Mich., Robert W. Haviland, Asst. U. S. Atty. Detroit, Mich., for appellee.

Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This case presents the question of whether a tenant in common of real estate who, together with one of his co-tenants in common, has conducted the financial transactions related to the real property under an assumed name using a jointly controlled bank account, may claim the Fifth Amendment privilege against compulsory self-incrimination with respect to the records of those transactions. Dr. Milton Shiffman has perfected an expedited appeal from an order of the district court adjudging him in contempt for refusing to produce before a grand jury certain records specified in a subpoena *duces tecum.* Though Dr. Shiffman was ordered confined, upon stipulation that "it does not appear that the appeal is frivolous or taken for delay," he was admitted to bail and released upon his personal recognizance, with no restrictions as to travel, pending determination of this appeal. 28 U.S.C. § 1826 (1970).

The grand jury subpoena was directed to "Dr. Milton Shiffman or any other authorized representative of G and S Investment." It commanded the production of "the following records of G and S Investment for the period 1972 to 1975:

(1) Cash Receipts Journal

(2) Cash Disbursements Journal

(3) Bank statements for any and all bank accounts of G and S Investment above mentioned

(4) Cancelled checks related to these bank accounts

(5) Deposit forms for deposits made to referenced bank accounts

(6) General Ledger

(7) Rental and Contractual agreements between G and S Investment and the following nursing homes:

Nightengale North Nursing Home
Nightengale East Nursing Home
Nightengale South Nursing Home
Clintonview Nursing Home
Whitmore Lake Nursing Home."

Dr. Shiffman refused to produce the subpoenaed documents and records, asserting that they would tend to incriminate him, and relying upon the Fifth Amendment guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . .."

In support of his position Dr. Shiffman filed an affidavit which is uncontradicted in the record. The affidavit discloses that "G & S Investments" (the true designation, rather than "G and S Investment" used in the subpoena; hereafter "G&S") is the name in which he and one Hyman Gordon have maintained a bank account since 1974. The only activity of G&S is to receive income from real estate owned by Dr. Shiffman, Hyman Gordon and their wives as tenants in common (an undivided one-third by each of the husbands and an undivided one-sixth by each of the wives), and to disburse the income to the owners after making required payments on a mortgage, including payments to an escrow account for taxes and insurance. The affidavit states that the only purpose of G&S is to segregate the transactions relating to the real estate rentals from the individual accounts of the owners. Both Gordon and Dr. Shiffman have authority to issue checks on the G&S account. The affidavit also discloses that a certificate was filed with the county clerk of Oakland County, Michigan, that Gordon and Shiffman were transacting business under the assumed name G&S Investments. This was probably done at the request of the bank.

Though the subpoena sought copies of agreements between G&S and five nursing homes, the affidavit asserts that G&S has never had a relationship with any of the nursing homes except the Whitmore Lake Convalescent Center. This home is located on the real estate owned by the Gordons and the Shiffmans and is operated by a Michigan corporation, Whitmore Lake Convalescent Center, Inc. (Whitmore Lake). G&S collects rents from Whitmore Lake. The only evidence introduced by the government in support of its motion for enforcement of the subpoena is a certified copy of the articles of incorporation which lists Gordon and Shiffman as incorporators and members of the first board of directors of Whitmore Lake. Hyman B. Gordon was designated first resident agent of the corporation.

A trial brief of the government disclosed that the grand jury which issued the subpoena to Dr. Shiffman is investigating alleged fraudulent claims for medicare benefits by nursing homes in Michigan. In response to questions by the District Judge counsel for the government stated that no attempt had been made to subpoena copies of leases or other contracts with G&S from Whitmore Lake. Advising government counsel that he would have to use his "own resources" to get these documents Judge Feikens ordered Shiffman to produce only the first six items listed in the subpoena. The decision to enforce the subpoena to this extent was based on a finding that ". . . when one human being throws his lot in with three other human beings, as with Mr. Gordon and the respective wives,

it seems to me that he by that action is saying, 'I am not looking for any Fifth Amendment protection as to any of this activity.'" (Oral opinion, Joint Appendix at 42).

In *United States v. White,* 322 U.S. 694, 697, 64 S.Ct. 1248, 1250, 88 L.Ed. 1542 (1944), the Supreme Court considered "the nature and scope of the constitutional privilege against self-incrimination." The issue in *White* was whether a representative of a labor union could decline to obey a subpoena *duces tecum* for certain union records on the ground of self-incrimination. Holding that "[t]he constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals," *Id.* at 698, 64 S.Ct. at 1251 the court ruled that the witness was not entitled to invoke the Fifth Amendment. It explained this restriction on the privilege in the following language:

> Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation. *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas. 1912D 558; *Essgee Co. v. United States,* 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917. See also *United States v. Invader Oil Corp.,* D.C., 5 F.2d 715. Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity. *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. But individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally. *Wilson v. United States, supra; Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784; *Baltimore & Ohio R. Co. v. Interstate Commerce Commission,* 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878; *Wheeler v. United States,* 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309; *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423; *Essgee Co. v. United States, supra.* Such records and papers are not the private records of the individual members or officers of the organization. Usually, if not always, they are open to inspection by the members and this right may be enforced on appropriate occasions by available legal procedures. See *Guthrie v. Harkness,* 199 U.S. 148, 153, 26 S.Ct. 4, 50 L.Ed. 130, 4 Ann.Cas. 433. They therefore embody no element of personal privacy and carry with them no claim of personal privilege. 322 U.S. at 699–700, 64 S.Ct. at 1251.

The union was held to represent "organized, institutional activity as contrasted with wholly individual activity." *Id.* at 701, 64 S.Ct. at 1252. The union had no Fifth Amendment privilege and the witness could not claim the privilege on behalf of himself either as an individual or as a union officer. Since the subpoenaed documents were held by the witness as a representative of the union he could not claim "that any part of them constituted his own private papers." *Id.* at 704, 64 S.Ct. at 1254.

The principles of *White* and cases cited therein were applied to the records of a three-partner law firm in *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). There a witness was commanded to produce the financial records of a law firm from which he had withdrawn as a partner. The records which were left with the remaining partners at the time of his withdrawal had been delivered to the witness a short time before issuance of the subpoena. The Supreme Court upheld an

adjudication of contempt for failure to obey the subpoena upon a finding that the records sought were those of a collective entity in the possession of the witness in a representative capacity. Even though the records of a collective entity might incriminate him personally, an individual cannot rely upon the privilege against self-incrimination to avoid producing them.

The *Bellis* court found that the rule which prevents one possessing the records of a collective entity from invoking the privilege against self-incrimination with respect to its records serves an underlying purpose of the privilege—"the protection of an individual's right to a 'private enclave where he may lead a private life.'"[1] Describing protection of individual privacy as the "major theme" of *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Court held that the very nature of an organized collective entity makes it impossible to sustain a claim of privacy or confidentiality with respect to its records.

■ The government contends that G&S is a partnership and that Shiffman is entitled to no Fifth Amendment privilege with respect to any of its records. The appellant maintains that G&S is not a partnership or any form of "organized collective entity." We conclude that G&S is not a partnership under Michigan law. Michigan has adopted the Uniform Partnership Act and Michigan Compiled Laws Annotated (M.C.L.A.) 449.7 sets forth "Rules for determining existence of a partnership." M.C.L.A. 449.7(2) provides that tenancy in common does not of itself establish a partnership, whether or not the owners share in profits from the property. Similarly M.C.L.A. 449.7(4)(b) provides that receipt of rent by a landlord as a share of profits shall not be the basis of an inference that the landlord is a partner. See also *Moore v. DuBard,* 318 Mich. 578, 594, 29 N.W.2d 94 (1947). There is no evidence in the record from which it could be determined that G&S is a partnership.

This does not end our inquiry, however. It is clear that a joint checking account on which two people—Gordon and Dr. Shiffman—have the authority to draw checks is maintained under the assumed name G&S Investments. The question for decision is whether Dr. Shiffman, by joining with Gordon in establishing and maintaining G&S as a medium for financial transactions related to the real estate owned by them and their wives, removed the records of such transactions from his individual "private enclave." The appellant argues that the Supreme Court did not establish a rule in *White* and *Bellis* that an individual can never claim the privilege against self-incrimination with respect to records other than those owned solely by himself. It is pointed out that in both cases the Court discussed at length various features of the entities involved—a labor union and a law partnership—which indicated substantial rights in the records of persons other than the witness. In *Bellis* emphasis was also placed on a number of indicia of a separate entity's existence, such as use of partnership stationery, telephone listing and bank account and holding itself out to the public as an established firm. Furthermore, Justice Marshall described the circumstances in *Bellis* where the witness was a former member of a three-person partnership with six employees as "the outer limits of the analysis of the Court in *White*." 417 U.S. at 94, 94 S.Ct. at 2186.

In cases decided by the various courts of appeals since *Bellis* the outcome appears invariably to have depended on whether the records subpoenaed related to wholly individual activity, as contrasted with organized, institutional activity. This was said to be the "key focus" of *Bellis* in *Matter of Witness Before the Grand Jury,* 546 F.2d 825, 827 (9th Cir. 1976). Though the degree of organized, institutional activity in that case was great, as opposed to that disclosed in the present case, the court's decision appears to hinge on its ultimate determination that the witness had no expectation of pri-

---

1. Quoted from *Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1965) (interior quotation marks omitted.)

*Bellis v. United States, supra* 417 U.S. at 91, 94 S.Ct. [2179] at 2184.

vacy with respect to the subpoenaed records.

As in *Bellis,* the records of a law firm were the subpoenaed matter in *Matter of Grand Jury Impaneled January 21, 1975,* 529 F.2d 543 (3d Cir.), *cert. denied, sub nom. Freedman v. United States,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976). The district court found that by agreement among the partners only the witness had access to the firm's records. Nevertheless, the court found that the partnership had an institutional identity apart from the witness-partner. The witness' exclusive right of access was held to be inconsequential for purposes of the privilege which was claimed. The court stated:

> To hold that the members of an institution could resurrect the fifth amendment privilege with respect to records, that they individually forfeited by identifying themselves with that institution, would seriously erode the established principle that the privilege against self-incrimination is purely personal. 529 F.2d at 547-48. (citation omitted).

In *United States v. Kuta,* 518 F.2d 947 (7th Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975), the *Bellis* principles were applied to the records of a two-member law firm. In addition to noting a number of factors indicating the existence of a separate institutional entity, the court found it "equally important" that there could be no expectation of privacy with respect to the subpoenaed records. *Id.* at 953.

All of the cases just discussed have dealt with the claims of partners that they had a privilege not to produce subpoenaed partnership records. The common thread which runs through them, however, is not the existence of a formal partnership. Rather, it is the fact that each witness has joined with one or more other persons in a venture which has produced records that are not in fact his wholly individual records. In so doing the witness has surrendered any expectation of privacy with respect to the records of the venture.

The fact that Dr. Shiffman and the other tenants in common each could have collected his or her share of the rent and paid the proper share of expenses is immaterial. In setting up G&S Shiffman and Gordon created an entity through which the financial transactions related to the jointly owned real estate were carried out. Though there was no organized institutional activity equivalent to the usual business activity of the corporation or partnership, the records of G&S undeniably reflect transactions which were not wholly those of Dr. Shiffman. Also, though the appellant has an interest in the records of G&S, since Gordon has the same interest, their possession by Dr. Shiffman is in a representative capacity.

In dealing with a Fifth Amendment claim of privilege in a somewhat different setting the Second Circuit recently had occasion to review the historic underpinnings of the privilege. See *United States v. Beattie,* 522 F.2d 267 (2d Cir. 1975), *vacated,* 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791 (1976), *modified,* 541 F.2d 329 (1976). In discussing the Supreme Court's treatment of the subject in *Bellis,* Judge Friendly found that the Court had "emphasized its recent tendency to place increased reliance on privacy as the prime rationale of the privilege . . .." 522 F.2d at 273. Quoting Justice Frankfurter, "what's not yours is not yours,"[2] the court concluded that cases denying the privilege with respect to records of entities have established the rule that "neither possession nor ownership, within or without the corporate context, can transform someone else's documents into one's own for the purpose of asserting the privilege . . .." *Id.*

In *Bellis,* after citing *United States v. White, supra,* and a number of its other opinions denying the availability of the privilege against self-incrimination in various contexts the Court stated:

---

2. Quoted from *Shapiro v. United States,* 335 U.S. 1, 58, 68 S.Ct. 1375, 1404, 92 L.Ed. 1787 (1948) (Frankfurter, J., dissenting).

These decisions reflect the Court's consistent view that the privilege against compulsory self-incrimination should be "limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records." *United States v. White, supra,* 322 U.S. at 701, 64 S.Ct. 1248. 417 U.S. at 89–90, 94 S.Ct. at 2184.

■ We conclude that to the extent Dr. Shiffman has elected to join with Mr. Gordon in conducting financial transactions related to the real estate owned by them and their wives as tenants in common under the assumed name G&S Investments he has withdrawn the records of such transactions from the privilege against compulsory production. The subpoenaed records cannot be said to be purely personal or wholly the individual records of the appellant.

The judgment of the district court is affirmed.