**In re GRAND JURY SUBPOENA.**

No. 92–1881.

United States Court of Appeals, First Circuit.

Submitted Aug. 14, 1992.

Decided Aug. 31, 1992.

---

Albert F. Cullen, Jr., Susan A. Correia and Cullen & Butters, Boston, Mass., on brief, for appellant.

A. John Pappalardo, U.S. Atty., and Mark W. Pearlstein, Boston, Mass., Asst. U.S. Atty., on brief, for appellee.

Before TORRUELLA, CYR and STAHL, Circuit Judges.

PER CURIAM.

At issue here is whether an individual involved in a Massachusetts "nominee trust" can assert the Fifth Amendment privilege against self-incrimination in order to resist a grand jury subpoena seeking trust records. The district court held that no privilege was available because the trust was a "collective entity." We agree and therefore affirm the order of contempt.

## I.

In December 1986, appellant John Doe, along with his brother, created a nominee trust (the "Roe trust") for the purpose of conducting real estate transactions. Doe and his brother designated themselves as the sole beneficiaries and the sole trustees. The Roe trust purchased a 204–unit apartment complex in Arlington, Massachusetts that same month, thereafter converting it to condominium form and offering the units for sale.[1] Subsequently, a federal grand jury commenced an investigation into whether fraudulent information had been provided to federally insured financial institutions in connection with the sale and financing of these condominiums. As part of this inquiry, Doe was served on February 14, 1992, in his capacity as custodian of records, with a subpoena *duces tecum* calling for the production of various trust records. The scope of the subpoena was narrow and specific: it called for "[a]ll closing documents, including, but not limited to, purchase and sale agreements, with respect to the sale of [ten specified units at the Arlington complex] sold in January 1989 to [a specified individual]."

---

**1.** According to an FBI affidavit, the Roe trust undertook similar measures with respect to a second complex containing 124 units, and eventually succeeded in selling over half the units at each location.

Doe refused to comply with the subpoena, claiming that to do so would impinge on his personal Fifth Amendment privilege. The district court granted the government's motion to compel, but Doe persisted in his refusal to produce the records at an appearance before the grand jury on July 13. That same day, the district court held him in contempt, and on July 29 it denied his motion for a stay pending appeal. Doe filed the instant appeal on July 31, and on August 4 we stayed the order of confinement pending appeal.

## II.

The collective entity rule reflects the notion that the Fifth Amendment privilege against self-incrimination is a "purely personal" one, *Bellis v. United States*, 417 U.S. 85, 90, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974), which applies "only to natural individuals," *United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). The privilege thus "cannot be utilized by or on behalf of any organization." *Id.* at 699, 64 S.Ct. at 1251. In particular, "an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis*, 417 U.S. at 88, 94 S.Ct. at 2183; *accord, e.g., Braswell v. United States*, 487 U.S. 99, 109, 108 S.Ct. 2284, 2290–91, 101 L.Ed.2d 98 (1988) (collective entity's custodian of records cannot resist subpoena on ground that act of production, as opposed to contents of records, would be personally incriminating). As we noted in *In re Grand Jury Proceedings (John Doe Co., Inc.)*, 838 F.2d 624 (1st Cir.1988), the "often quoted rationale" for the collective entity rule is that

individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination.

*Id.* at 625 (quoting *White*, 322 U.S. at 699, 64 S.Ct. at 1251).[2] *See generally Braswell*, 487 U.S. at 104–09, 108 S.Ct. at 2288–91 (reviewing evolution of rule).

Whether an organization is properly deemed a collective entity has little to do with its size. "It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." *Bellis*, 417 U.S. at 100, 94 S.Ct. at 2189 (applying rule to three-person partnership). Indeed, *Braswell* held the rule applicable to a one-person corporation.[3] *See* 487 U.S. at 101, 108 S.Ct. at 2286; *accord, e.g., United States v. Lawn Builders of New England, Inc.*, 856 F.2d 388, 394 (1st Cir.1988) (per curiam). Rather, in defining the nature of a collective entity, the Court has emphasized

the existence of an organization which is recognized as an independent entity apart from its individual members. The group must be relatively well organized and structured, and not merely a loose, informal association of individuals. It must maintain a distinct set of organizational records, and recognize rights in its members of control and access to them.... [I]t must be fair to say that

---

2. *See also Bellis*, 417 U.S. at 90, 94 S.Ct. at 2184 ("In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations.").

3. At the same time, the *Braswell* Court held that the government could make no evidentiary use of the act of production against the custodian in his individual (as opposed to representative) capacity. 487 U.S. at 118 n. 11, 108 S.Ct. at 2295 n. 11. It also left open the question whether the privilege might apply "when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." *Id.*

48

the records demanded are the records of the organization rather than those of the individual....

*Bellis*, 417 U.S. at 92–93, 94 S.Ct. at 2185. *See, e.g.,* 1 W. LaFave & J. Israel, *Criminal·Procedure* § 8.12(b), at 695 (1984) (entity exception not inapplicable "simply because an organization embodie[s] a combination of personal and group interests; the presence of an organizational structure serving the group interest [is] sufficient"). The crucial factor, the *Bellis* Court indicated, was whether the organization has "an established institutional identity independent of its individual [constituents]." 417 U.S. at 95, 94 S.Ct. at 2187. *See In re Two Grand Jury Subpoenae Duces Tecum,* 793 F.2d 69, 72 (2d Cir.1986) (describing this as the "critical issue").

■ Doe acknowledges that ordinary trusts have been held to fall within this definition. *See Watson v. Commissioner of Internal Revenue,* 690 F.2d 429, 431 (5th Cir.1982) (per curiam); *United States v. Harrison,* 653 F.2d 359, 361–62 (8th Cir. 1981); *In re Grand Jury Proceedings (Hutchinson),* 633 F.2d 754, 756–57 (9th Cir.1980); *In re Grand Jury Subpoena,* No. 91–10708–Z, 1991 WL 354997 ·(D.Mass 1991) (non-nominee Massachusetts realty trusts). He contends, however, that a Massachusetts nominee trust is not an ordinary trust. Indeed, he argues that it should not be regarded in this context as a "trust" at all, but rather as something "comparable to a sole proprietorship" or "similar to a joint tenancy or a tenancy by the entirety." *Brief* at 11. We agree that the Roe trust (in common with all nominee trusts) possesses some unique characteristics, but we disagree that these suffice to exclude it from the definition of collective entity.

A nominee trust is a "form of ownership of real estate which is in considerable use in Massachusetts as a title-holding device," *Penta v. Concord Auto Auction, Inc.,* 24 Mass.App. 635, 639, 511 N.E.2d 642 (1987), "one which affords certain tax [and other] advantages," *Apahouser Lock & Sec.*

*Corp. v. Carvelli,* 26 Mass.App. 385, 388, 528 N.E.2d 133 (1988). Its typical features are the following: (1) the names of the beneficiaries are filed with the trustees, rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustees, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interests. *See* Birnbaum & Monahan, *The Nominee Trust in Massachusetts Real Estate Practice,* 60 Mass.L.Q. 364, 364–65 (1976).[4] The third listed feature

is the key to the nominee nature of the trust. Unlike in a "true trust," the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of (in effect, as agents for) the beneficiaries.

*Id.* at 365. *See, e.g., Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 893 (1st Cir.1979) (trustees of nominee trust have "only perfunctory duties"); *Apahouser,* 528 Mass. App.Ct. at 135, 528 N.E.2d 133 ("trustees are frequently seen as agents for the principals' convenience rather than as trustees in the more familiar fiduciary sense").

The declaration of trust creating the Roe trust contains each of the features described above. In particular, the discretionary authority of the trustees is narrowly circumscribed. They are directed to hold the trust principal, receive the income therefrom, and distribute it to the beneficiaries at least annually. And they are authorized to open and close bank accounts, deposit and withdraw funds, and sign checks. Apart from these functions,

4. *See also* Cohen, *Massachusetts Estate Tax Planning for Non–Massachusetts Residents Owning Real Estate Located in Massachusetts,* 70 Mass.L.Rev. 124, 126–29 (1985); Partan, *Nominee Trusts: Refresher Course,* 14 Mass.Law. Wkly. 850 (Feb. 24, 1986); MCLE, *Forms and Tax Consequences of Real Estate Ownership,* 193–205, 221–32 (1986).

"the Trustees shall have no power to deal in or with the Trust Estate except as directed by the beneficiaries." Declaration of Trust ¶ 3.

As Doe correctly notes, the fact that a nominee trust's beneficiaries retain control over the trustees has led, in other contexts, to the "trust" status being disregarded. *See, e.g., Druker v. State Tax Comm'n*, 374 Mass. 198, 201, 372 N.E.2d 208 (1978) ("extreme degree of control exercised by beneficiaries ... vitiates the creation of a trust for purposes of [state income] taxation").[5] Doe relies particularly on two bankruptcy cases: *In re Village Green Realty Trust*, 113 B.R. 105 (Bankr.D.Mass. 1990), and *In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D.Mass.1989), *aff'd*, 120 B.R. 245 (D.Mass.1990). Both courts held that nominee trusts were not "business trusts" within the meaning of the federal bankruptcy statute. More important, in determining how the entities should be characterized, they each disregarded the trust status and inquired into the relationship among the beneficiaries. The *Village Green* court, for example, stated:

> Since the beneficiaries of the nominee trust have the exclusive power to direct the activities of the trustee, it makes sense to view the beneficiaries as the owners of the trust res and to look to their relationship to each other for bankruptcy purposes. In other words, it is not the nominee trust itself that engages in business; it is the principals who engage in business activities, using the device of a nominee trust and the assistance of their trustee/agent. The relationship of the beneficiaries may be a

partnership, corporation, co-tenancy or other entity.

113 B.R. at 114; *accord Medallion Realty*, 103 B.R. at 12. After examining Massachusetts law, the *Medallion Realty* court determined that the "trust" was properly viewed as a partnership. *Id.* at 12–14. The *Village Green* court, by contrast, simply dismissed the petition, putting the onus on the beneficiaries to refile under a proper format. 113 B.R. at 114–15.

By analogy, Doe contends that we should overlook the trust status of the Roe trust. He further argues, without elaboration, that construing the "trust" as a partnership (which would keep it within the definition of a collective entity) is precluded inasmuch as the declaration of trust fails to define the relationship between the beneficiaries. He concludes, accordingly, that he holds title to the property as co-tenant or sole proprietor, that the documents sought are his personal records, and that he can resist the subpoena on personal Fifth Amendment grounds. This line of reasoning falters on several grounds.

■ Were we to disregard the Roe trust's nominal status as requested and attempt a redefinition under state law, it is safe to say we would not end up with a sole proprietorship.[6] Doe, after all, is not the sole beneficiary. And we think it unlikely that we would end up with a tenancy in common. Something more than joint ownership would seem to be involved; through the vehicle of the Roe trust, Doe and his brother over several years engaged in the purchase, conversion, and attempted sale of over 300 condominium units, presumably for profit.[7] Yet we are disinclined to un-

---

**5.** As it was unnecessary to its decision, the *Druker* Court avoided deciding whether the nominee trust should be regarded as a partnership. 374 Mass. at 202 n. 1, 372 N.E.2d 208.

**6.** A sole proprietor (unlike the sole owner of a corporation) is not subject to the collective entity rule. *See, e.g., Braswell*, 487 U.S. at 104, 111 n. 5, 108 S.Ct. at 2288, 2292 n. 5.

**7.** Moreover, even if the Roe trust were deemed a tenancy in common, we note that, in the view of one court at least, the collective entity rule would nonetheless apply. In *In re Grand Jury Proceedings (Shiffman)*, 576 F.2d 703 (6th Cir.),

*cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978), two individuals, who with their spouses owned real estate as tenants in common, opened a bank account under the name "G & S Investment." The sole purpose of that entity was to receive income from the property and disburse it to the owners after deducting for expenses. In response to a subpoena for G & S records, one of the owners interposed a Fifth Amendment claim. The court determined that G & S was not a partnership under state law, but nonetheless deemed the collective entity rule applicable. "Though there was no organized institutional activity equivalent to the usual business activity of the corporation or

dertake any such inquiry. For one thing, the present record militates against it. Doe conveniently proffers a redefinition of the Roe trust based exclusively on the terms of the trust declaration. It is true that little of relevance in this regard can be gleaned from that document. *See* Birnbaum & Monahan, *supra,* 60 Mass.L.Q. at 373 ("The declaration of trust which creates a nominee trust creates no 'association' among the beneficiaries and does not define their rights *inter se* with respect to the control of the business."). Yet in order properly to characterize the legal status of the Roe trust, one would need to ascertain whether any subsidiary agreements existed between Doe and his brother regarding the trust's operations. Doe has offered no evidence in this regard. As the proponent of the privilege claim, it was his burden to do so. *See, e.g., United States v. Wujkowski,* 929 F.2d 981, 984 (4th Cir.1991). *Cf. United States v. Bay State Ambulance and Hosp. Rental Service, Inc.,* 874 F.2d 20, 28 (1st Cir.1989) (attorney-client privilege).

More important, we think such an inquiry unnecessary. In *In re Grand Jury Proceedings (Hutchinson),* the condemnee argued that the IRS considered her trust to be grantor-controlled, rendering it "a shell for purposes of the analysis set forth in *Bellis.*" 633 F.2d at 757. The court, while acknowledging that the trust "may possess certain characteristics that affect the way it is treated for federal tax purposes," nonetheless held that "its treatment for tax purposes is largely irrelevant to the determination of whether it is an organization separate and apart from its creator." *Id.* Analogously, we think that the Roe trust, regardless of its technical status under state law, has a sufficiently "established institutional identity independent of its individual [constituents]," *Bellis,* 417 U.S. at 95, 94 S.Ct. at 2187, to fall within the definition of collective entity.

■ "An organization may constitute a collective entity even when it has not taken steps to formalize its status." *In re Two Grand Jury Subpoenae,* 793 F.2d at 72 (finding collective entity rule applicable to two-person law firm, despite lack of partnership agreement and lack of partnership tax returns). Here, the Roe trust possesses a formal status, the validity of which is not questioned under state law. *See Penta,* 24 Mass.App.Ct. at 639, 511 N.E.2d 642. It was established in 1986 by the execution and filing, with the appropriate registry of deeds, of a trust declaration detailing its structure and operation, and has remained in operation since that time. The trustees are authorized to act independently on behalf of the trust in specific (albeit limited) ways—*e.g.,* maintaining bank accounts; writing checks.[8] Third parties are entitled to rely on actions taken by the trustees, without inquiring as to their authority. The trustees, even if deemed agents with respect to third-party transactions, retain fiduciary obligations with regard to the trust itself. And, while the evidence is unclear in the instant case, it cannot be doubted in general that a nominee trust is held out to the world as being separate and apart from its beneficiaries; indeed, one of the inducements for creating such an entity is to enable the latter to remain anonymous.

It is also significant, of course, that Doe is not the sole beneficiary. As with his contention that the trust is a sole proprietorship, his assertion that the trust records are his "personal papers" flies in the face of this fact. The other beneficiary obviously has an equal interest in, and an equal right of access to, such records. To the extent that the collective entity rule still draws nurture from notions of privacy, Doe cannot be said to have any expectation of privacy with respect to such records. *See*

---

partnership, the records of G & S undeniably reflect transactions which were not wholly those of Dr. Shiffman." *Id.* at 707. He was thus held to possess the records in a representative, rather than personal, capacity.

**8.** Doe states (without supporting evidence) that the trust maintains no separate bank accounts.

Yet the trust declaration provides therefor. He similarly states that the trust has filed no separate tax returns. As just mentioned, the same was true in *In re Two Grand Jury Subpoenae,* 793 F.2d at 72, where a collective entity was held to exist.

*In re Grand Jury Proceedings (Shiffman)* 576 F.2d 703, 707 (6th Cir.), *cert. denied,* 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978). This consideration, in any event, reinforces the view that Doe possesses, and is directed to produce, the trust records in his representative rather than personal capacity.

■ Finally, we might observe that Doe has on occasion mischaracterized, and otherwise failed to address, the nature of the privilege at stake here. To the extent that the Fifth Amendment applies to the *contents* of private papers—a matter currently in some doubt, *see United States v. Doe,* 465 U.S. 605, 610–12, 104 S.Ct. 1237, 1241–42, 79 L.Ed.2d 552 (1984); *id.* at 618, 104 S.Ct. at 1245 (O'Connor, J., concurring)—it does so "only in rare situations, where compelled disclosure would break the heart of our sense of privacy." *In re Steinberg,* 837 F.2d 527, 530 (1st Cir.1988) (quotations omitted). Yet the trust records here, pertaining to the sale of condominiums, cannot conceivably be deemed "intimate personal papers." *Id.* Contrary to Doe's suggestion, therefore, the contents thereof are clearly not privileged. Rather, the potential for self-incrimination arises only from the act of production, i.e., from the tacit concession that the records exist, are in Doe's possession, and are authentic. *See, e.g., Fisher v. United States,* 425 U.S. 391, 410–11, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). As mentioned, *Braswell* held that the act-of-production privilege does not apply to a collective entity's custodian of records. Yet were we to accept Doe's argument that the collective entity rule is inapplicable, he would have the further task of demonstrating a viable act-of-production privilege. Curiously, Doe has failed to address this concern. We note only that, given his concession that the ten condominium sales in question occurred, and given the specificity with which the subpoena describes the documents sought, it is by no means clear that he would be able to establish such a claim. *See id.* at 411, 96 S.Ct. at 1581 (describing "foregone conclusion" exception); *accord Doe,* 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13. *See also* 1 W. LaFave & J. Israel, *supra,*

§ 8.12, at 181 n. 25.16 (Supp.1991) (noting that communication of authenticity may be non-testimonial when specificity of subpoena obviates need of custodian to discriminate among documents).

*The order of contempt is affirmed.*