GERALD ROBERTS vs. JASON S. ROBERTS.

Suffolk. November 10, 1994. - March 13, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Nominee. Trust,* Beneficiary, Real estate trust, Trustee's authority, Termination. *Wills, Statute of.*

A nominee trust providing a gift over of the res to the trustee upon the death of both beneficiaries was an inter vivos transfer of a future interest and was not a testamentary disposition invalid for failure to be subscribed by two or more competent witnesses as required by the Statute of Wills. [687-692]

CIVIL ACTION commenced in the Land Court Department on November 1, 1989.

The case was heard by *Peter W. Kilborn,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Neil E. Roberts* for the plaintiff.

*Jonathan J. Margolis* for the defendant.

ABRAMS, J. This dispute between two brothers, Gerald Roberts, the plaintiff, and Jason S. Roberts, the defendant, concerns the ownership of two contiguous parcels of commercial real estate located in Reading. The case was tried before a Land Court judge. The judge found for the defendant, and entered judgment to that effect. The plaintiff appealed. We allowed his application for direct appellate review. We affirm.

The two brothers are the children of Harry and Rose Rosenblatt. In 1968, the family purchased the property at issue and opened a Midas franchise on it. Title to the property was taken in a trust, known as the Harro Trust. The declaration of trust, which was duly recorded in the registry of deeds, was executed by Gerald, as sole trustee.

Harry and Rose are listed as beneficiaries in a revisable unrecorded schedule. The trustee had to pay income to the beneficiaries at least annually. The trustee was authorized to open checking and savings accounts and safe deposit boxes and to deposit and withdraw funds in and from them. The trust was to last for twenty years or until terminated at the request of either beneficiary. On termination, the trustee was directed to convey the trust estate to the beneficiaries as tenants in common. The trust provided that, except for the aforesaid powers, "the Trustees shall have no power to deal in or with the Trust Estate except as directed by the beneficiaries." The trust also provided that third parties could conclusively rely on a trustee's certificate and on the execution of any document by the trustee. The beneficiaries could add or remove a trustee and amend the trust. Such actions were required to be recorded in the registry of deeds.

Approximately one and one half years after the creation of the trust, the family sold the Midas franchise. Since then, the property has been leased to outsiders. In July, 1973, a first amendment to the Harro Trust was executed before a notary and recorded. Jason was appointed cotrustee and a paragraph was added providing that, "[u]pon the death of both beneficiaries hereunder the Trustees shall transfer and convey the specific assets constituting the Trust estate . . . to the Trustees as tenants in common."

Due to Gerald's failure to repay debts, his inattention to the affairs of the trust and Harry's suspicions that Gerald was using the trust to finance an extravagant life style, Harry and Rose decided that Gerald was not to share in the trust's assets. On March 30, 1976, they executed before a notary and recorded a second amendment to the Harro Trust. The amendment removed Gerald as trustee and left Jason as sole trustee. The paragraph added by the first amendment was replaced with a provision that, "[u]pon the death of both beneficiaries hereunder, the Trustee shall have full power and authority to deal with the Trust Property in his own right and the Trust shall be deemed to have terminated."

A final amendment was executed and recorded on May 29, 1980. It set forth procedures for appointing a successor trustee and prohibited the appointment of Gerald as trustee.[1] Harry died in May, 1985, and Rose died in November of that year. The Reading property was transferred to Jason. Gerald argues that this transfer is invalid because it was not attested to by two competent witnesses in accordance with the Statute of Wills. See G. L. c. 191, § 1. The Land Court judge concluded that the transfer was valid.

The Harro Trust was a nominee trust: "an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties." *Morrison* v. *Lennett* 415 Mass. 857, 860 (1993), quoting *Johnston* v. *Holiday Inns, Inc.*, 595 F.2d 890, 893 (1st Cir. 1979). "Unlike . . . a [traditional trust] the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of . . . the beneficiaries." *Morrison, supra.*[2] The plaintiff argues that, despite the fact that

---

[1] The amendment provided that: "Gerald Roberts, now of Needham, Massachusetts, shall not be appointed trustee of this Trust. In the event that the current Trustee, Jason S. Roberts, should die, resign, or be unable to serve for any reason, the beneficiaries may agree upon a successor Trustee, other than the said Gerald Roberts. In the event that the beneficiaries are unable to agree, or both of them are unable by reason of death or disability to participate in the selection of a successor Trustee, the Middlesex Probate and Family Court shall be requested to appoint a successor Trustee. It is specifically requested, however, that the said Gerald Roberts shall not be appointed to this position or any other fiduciary position under this Trust. In the event that one of the beneficiaries is unable by reason of death or disability to participate in the appointment of a successor Trustee to Jason Roberts, then the other beneficiary may appoint such a successor. Said successor may not, however, be Gerald Roberts."

[2] The typical features of a nominee trust are: "(1) the names of the beneficiaries are filed with the trustees rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustees, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interests. . . . The third listed feature is the key to the nominee na-

the parties intended a trust, the so-called trustee is, in fact, not a trustee, but merely an agent for the beneficiaries. Because the death of the principal terminates an agent's authority to convey an interest in the principal's property, *Gallup* v. *Barton*, 313 Mass. 379, 382 (1943); Restatement (Second) of Agency § 120 comment a, at 305 (1957), the plaintiff argues that Jason could not transfer the property to himself and the property belonged in Rose's estate.

Nominee trusts have characteristics of both agency and trust; the trustee is an "agent-trustee" who holds title to property "for the benefit of and subject to the control of another." Restatement (Second) of Agency, *supra* at § 14B, at 62.[3] Nominee trusts are subject to the rules of agency for certain purposes. *Apahouser Lock & Sec. Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988) ("In [nominee trusts], trustees are frequently seen as agents for the principals' convenience rather than as trustees in the more familiar fiduciary sense"). See also, e.g., *Drucker* v. *State Tax Comm'n*, 374 Mass. 198, 201 (1978) ("extreme degree of control exercised by beneficiaries . . . vitiates the creation of a trust for purposes of [state income] taxation"). The fact that a nominee trust is held to be an agency in some contexts, however, does not mean that it should be treated as an agency in every instance. Trusts have been recognized for some purposes even though they are ignored for others. For example, revocable inter vivos trusts used in estate planning are ignored for tax

ture of the trust." *In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir. 1992), citing Birnbaum, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. 364, 364-365 (1976).

[3]We note that in the present case, while the beneficiaries had a great deal of control, their power was not unlimited: they could not, by virtue of the third amendment, appoint Gerald as trustee; they could not dispute a third party's rights under any transaction entered into by the trustees, purportedly on behalf of the trust; they gave the trustees the power to administer the cash of the trust estate; they could not revoke or modify the trust except by formal written instrument; and they could not revoke the trust by a will, see *Leahy* v. *Old Colony Trust Co.*, 326 Mass. 49, 53 (1950), quoting Restatement of Trusts § 330 comment j (1939) ("If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by notice to the trustee, he cannot revoke the trust by his will").

purposes, see 26 U.S.C. § 676 (a) (1988), but are effective to hold and pass property, see *National Shawmut Bank* v. *Joy*, 315 Mass. 457 (1944); *Penta* v. *Concord Auto Auction, Inc.*, 24 Mass. App. Ct. 635, 639 (1987).

"Gifts over" are not typical of nominee trusts; nominee trusts do not normally provide for disposition of the res to anyone other than the beneficiaries.[4] Gifts over also are not related to the purposes for which nominee trusts are used. See *In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir. 1992) (tax advantages); *Carvelli, supra* at 388 (same); Birnbaum, *supra* at 365-366 (maintaining anonymity of ownership, easing title transferability and avoiding title transfers). The gift over provision in the Harro Trust did not give the beneficiaries any additional control over the trust. Because the gift over is unrelated to a typical nominee trust, see *In re Grand Jury Subpoena, supra* at 48; *Carvelli, supra* at 388; *Drucker, supra* at 201, agency principles are not applicable.

When they executed the first amendment, Harry and Rose intended a present transfer of a future interest, albeit subject to recall, to Gerald and Jason. In executing the second amendment, they recalled that gift and transferred a future interest to Jason only.[5] The question is whether the purported disposition of the trust estate was testamentary. A testamentary transfer would be invalid because the transfer did not comply with the two-witness requirement of the Statute of Wills. G. L. c. 191, § 1 (requiring testamentary dispositions to be subscribed by two or more competent witnesses). See *Joy, supra* at 470; *Russell* v. *Webster*, 213 Mass. 491,

---

[4]Generally, the beneficiaries receive title as tenants in common upon termination of a nominee trust. *In re Grand Jury Subpoena, supra* at 48. *Johnston* v. *Holiday Inns, Inc.*, 595 F.2d 890, 893 (1st Cir. 1979).

[5]The plaintiff argues that the beneficiaries could not have intended to transfer an interest in the trust estate because, if a successor trustee were appointed by the court under the terms of the third amendment, the interest would go to a stranger. A successor trustee would be appointed only on Jason's resignation, death or inability to serve as trustee. Absent Harry, Rose, and Jason all dying simultaneously, the beneficiaries would have had ample opportunity to avoid this contingency by agreeing on a successor trustee or by amending or revoking the trust.

491-492 (1913). An inter vivos transfer of a future interest, however, would be valid even without two witnesses.[6]

"[A] trust is 'not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor-trustee reserves a beneficial life interest[,] power to revoke and modify the trust . . . [and] controls the administration of the trust.' " *Sullivan* v. *Burkin*, 390 Mass. 864, 869 (1984), quoting Restatement (Second) of Trusts § 57 comment h (1959).[7] The second amendment gave Jason a future interest in the trust estate at the time it was executed. That disposition was not testamentary. Future interests are valid even though subject to being eliminated at any moment by the exercise of powers retained by life beneficiaries. See *Sullivan, supra*; *Joy, supra*. The ability to control the activities of the trustees does not pose any additional peril to such interests. It therefore does not affect their validity.

In *National Shawmut Bank* v. *Joy, supra*, we said that an inter vivos trust with a gift over of the trust estate on the settlor's death was a valid nontestamentary transfer even though the settlor retained a beneficial life estate, a general power of appointment, the power to withdraw principal from the trust and the power to "alter, amend or revoke" the trust.

---

[6] The fact that the gift over achieves the same ends as a testamentary transfer is immaterial. See *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 471 (1944) ("If an owner of property can find a means of disposing of it inter vivos that will render a will unnecessary for the accomplishment of his practical purposes, he has a right to employ it. The fact that the motive of a transfer is to obtain the practical advantages of a will without making one is immaterial").

[7] We note that, in the Harro Trust, the beneficiaries, who had control over the trust, were not the actual settlors. They did not execute the trust instrument. The res was purchased by means of two mortgages and an advance from Roberts Enterprises, Inc., a corporation funded by Harry, but owned by Gerald and Jason. The parties believed and it is not disputed that the property belonged to Harry and Rose. The beneficiaries were the settlors for all intents and purposes. See *Sullivan* v. *Burkin*, 390 Mass. 864, 868 (1984) ("For the purposes of determining whether a trust is testamentary . . . the origin of the assets, totally at the disposal of the settlor once received, should make no difference").

*Id.* at 472-475. We also said that the "reservation by a set-tlor of the power to control investments [by the trust] does not impair the validity of a trust" or the validity of a gift over as an inter vivos transfer. *Id.* at 476. There is no reason to treat the Harro Trust differently. The only material differ-ence is that, in the present case, the beneficiaries control not only investments, but almost all discretionary actions of the trust. Where a trust allows the beneficiaries to receive all the income and principal they desire, there are no discretionary functions except managing investments.

In *Sullivan* v. *Burkin, supra,* we held that a trust with remainder interests given to others on the settlor's death was not testamentary in character where the settlor was sole trus-tee and retained a broad power to modify or revoke the trust, the right to receive income, and the right to invade principal during his life. *Id.* at 867-868.[8] Unlike the Harro Trust, the trust did not contain a provision that, with limited excep-tions, the trustees may act only at the direction of the benefi-ciaries. The situation was essentially the same, however, be-cause the present beneficiary was the sole trustee and therefore, the trustee would only act at the direction of the beneficiary.[9]

Because the gift over in the Harro Trust is not materially different from the gifts over in *Sullivan* and *Joy*, it should be treated similarly. We therefore hold that the gift over was a valid inter vivos transfer.[10] Our determination is not antithet-

---

[8]We also note our opinion in *Greeley* v. *Flynn,* 310 Mass. 23 (1941). In that case "the settlor was herself the trustee and had every power of con-trol, including the right to withdraw principal for her own use. Yet the gift over at her death was held valid and not testamentary." *Joy, supra* at 476-477. That case differs from the present one in that it dealt with a savings bank trust. *Greeley, supra* at 25.

[9]The plaintiff tries to distinguish this case by arguing that the power of control of a trustee is a limited power which can only be exercised in ac-cordance with the terms of the trust. This distinction fails because where, as in *Sullivan,* such power is combined with a beneficial life estate, the right to all income and principal, and the power to modify or revoke the trust at will, it is, essentially, an unrestricted power.

[10]The defendant requests reasonable attorney's fees without setting forth any grounds therefor. We deny the request.

ical to the purposes of the Statute of Wills. "The formal requisites of wills serve two main purposes: to insure that dispositions are carefully and seriously made, and to provide reliable evidence of the dispositions." *Blanchette* v. *Blanchette*, 362 Mass. 518, 525-526 (1972). See *Second Bank-State St. Trust Co.* v. *Pinion*, 341 Mass. 366, 371 (1960) (policy of fraud prevention). The first and second amendments, which effectuated the gift over, were embodied in formal documents which were notarized, and thus had an attesting witness, and recorded. The formalities insured that the gift over was carefully and seriously made, and the notarization and recording of the amendatory documents provided reliable evidence of the disposition.

*Judgment affirmed.*