**In re GRAND JURY PROCEEDINGS.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Barbara HUTCHINSON,**
**Defendant–Appellant.**

**No. 80–5574.**

United States Court of Appeals,
Ninth Circuit.

Aug. 29, 1980.

---

Howard A. Allen, Michael L. Lipman, Asst. U.S. Attys., argued, M. James Lorenz, U.S. Atty., San Diego, Cal., for plaintiff–appellee.

Louis B. Rubin, San Diego, Cal., for defendant–appellant.

Before FLETCHER, ALARCON and CANBY, Circuit Judges.

FLETCHER, Circuit Judge.

This is an appeal from an order adjudging the appellant, a grand jury witness, in civil contempt of court for refusing without just cause to produce documents before the grand jury as ordered by the court. Jurisdiction for this appeal is based on 28 U.S.C. §§ 1291 and 1294.

The appellant, Barbara Hutchinson, is the grantor, and one of three trustees of the

Estate Guardian Educational Trust (EGET). She formed EGET in June 1976, as the entity through which to operate her tax–advisory services, and enterprises called Citizens Courtroom Workshop and Taxfax.

On June 4, 1980, a grand jury subpoena duces tecum was issued to Hutchinson requiring her to produce business records of EGET, CCW, and Taxfax in her possession. She appeared before the grand jury on June 26, 1980 but refused to produce the documents on the grounds that she had been subjected to illegal electronic surveillance. A hearing was held on June 26, 1980 at which Judge Schwartz rejected her electronic surveillance argument, holding that the government's affidavits denying illegal surveillance were adequate to rebut her nonspecific claim of improper surveillance. The court ordered Hutchinson to comply with the subpoena. Hutchinson returned to the grand jury on June 26, 1980 but continued in her refusal to produce documents, this time claiming first and fifth amendment protection, as well as renewing her claim of illegal electronic surveillance. Her appearance before the grand jury was continued to July 24, 1980.

The government moved to compel production and a hearing was held on July 21, 1980 before Judge Turrentine. The motion was granted and Hutchinson was given until July 31, 1980 to comply.

She returned to the grand jury on the morning of July 31, 1980 but still refused to comply, advancing the same three objections. At a hearing that afternoon, Judge Nielsen held her in contempt for failure to comply with Judge Turrentine's order.

I

■ Hutchinson argues that she was given insufficient notice to allow her to prepare a defense. This court has held that a recalcitrant witness is entitled to notice and a reasonable opportunity to prepare a defense before being held in contempt. *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). What is a reasonable time depends upon the circumstances of the particular case. *United States v. Alter, supra*, at 1023.

Even though the time interval between the act of contempt and the contempt hearing is short, a reasonable opportunity to prepare a defense is deemed accorded where the contemnor has adequate opportunity to present a defense prior to the contempt hearing. *In re Lewis*, 501 F.2d 418 (9th Cir. 1974); *United States v. Alter, supra*, at 1023–24.

■ Hutchinson's arguments in this case are primarily legal and involve the characterization of the trusts for fifth amendment purposes and the scope of first amendment protection. She had an opportunity to and did present arguments on those issues at the hearing on the government's motion to compel on July 21, 1980. She had an opportunity to and did present her electronic surveillance argument at her June 26, 1980 hearing.

■ Hutchinson also contends that she was prevented from introducing evidence to prove that certain of the records were stolen and was thus denied an adversary hearing. This argument is specious since the subpoena did not reach documents which were not in her possession or under her control.

II

■ The fifth amendment privilege against self–incrimination protects an individual against forced production of personal papers and effects, at least to the extent that the act of producing the documents might serve as a basis for incriminating inferences. *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The privilege does not extend, however, to protect a person from producing "the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974).

■ EGET, CCW, and Taxfax possess the outward attributes of an "organization," as that word is used in *Bellis*, and are

unquestionably more than simply the "alter ego" of Hutchinson.

Hutchinson's principal argument is that the IRS considers EGET to be grantor–controlled. Hutchinson argues that such a trust is merely a shell for purposes of the analysis set forth in *Bellis*, making the records of the trust her personal documents.

■ The trust may possess certain characteristics that affect the way it is treated for federal tax purposes, but its treatment for tax purposes is largely irrelevant to the determination of whether it is an organization separate and apart from its creator. EGET was formed under and owes its existence to state law. It had three trustees, all of whom had fiduciary duties to the trust and its beneficiaries. The trustees had a right of access to all trust records, and indeed, had a fiduciary duty to review the records and operations of the trust. It is a trust with independent functions. Its records and documents are not personal to Hutchinson. She had no legitimate expectation of privacy in respect to the subpoenaed material.

### III

■ Hutchinson argues that the subpoena infringes her and others' first amendment rights by forcing her to divulge the identities of clients, friends, and associates who have joined with her to change the tax system. It is true that the subpoena asks for copies of tax returns prepared for clients and records of receipts and disbursements of the entities, and thus may necessarily require disclosure of the identities of persons who dealt with the trust entities. We think, however, that the subpoena is narrowly drawn to facilitate the government's legitimate investigation of possible violations of the tax laws. We would be faced with a different question were the request for lists of all persons who attended her tax protest meetings. Appellant in this case has made no showing of a chilling effect on the free right to associate which outweighs the government's interest in enforcement of the tax laws.

AFFIRMED.