**UNITED STATES of America, Petitioner,**

v.

**Craig A. KENNEDY, as Trustee of Vanguard Global Services Trust and Faith Heritage Family Trust, Respondent.**

**No. 00–MC–8–K(J).**

United States District Court, N.D. Oklahoma.

Aug. 3, 2000.

---

Martin M. Shoemaker, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

Craig A. Kennedy, Broken Arrow, OK, for Craig A. Kennedy.

### ORDER

JOYNER, United States Magistrate Judge.

Now before the Court is Petitioner's "Motion for Order to Show Cause Why Respondent Should Not Be Held In Contempt," and Respondent's "Motion to Dismiss the Petition to Enforce IRS Summons." [Doc. Nos. 14 and 16 respectively].

The Court held a hearing on these motions on August 1, 2000 at which the government and Craig Kennedy, *pro se,* were present. As characterized below, the Government's motion for order to show cause is **GRANTED,** and Respondent's motion to dismiss is **DENIED.**

## I.  PROCEDURAL HISTORY

On October 20, 1999, the United States Internal Revenue Service ("IRS") served two IRS summonses on Craig A. Kennedy as trustee for Vanguard Global Services Trust and as trustee for Faith Heritage Family Trust ("the trusts").[1] The summonses relate to the tax liability of the trusts, and they summoned Mr. Kennedy, as trustee of the trusts, to appear before an IRS agent "to give testimony and to bring ... and produce for examination [the items listed on the attachment to the summonses] ...." *Id.*

Pursuant to the October 1999 summonses, Mr. Kennedy appeared as trustee of the trusts before an IRS agent on November 18, 1999. At that time, Mr. Kennedy produced some documents, but did not, in the IRS' view, fully respond to the summonses. On February 10, 2000, the IRS filed with this Court a petition to enforce the October 1999 summonses and a motion for the issuance of an order to show cause why Mr. Kennedy should not be required to fully respond to the October 1999 summonses. *See* Doc. Nos. 1–4. The Court issued an Order to Show Cause on February 16, 2000, and set the matter for hearing on April 20, 2000, which was later continued, at Mr. Kennedy's request, to May 4, 2000. *See* Doc. Nos. 6–9.

On May 2, 2000, the government and Mr. Kennedy submitted an Agreed Order to the Court. *See* Doc. No. 13. Pursuant to the Agreed Order, Mr. Kennedy agreed to meet with an IRS agent, within 30 days, "to give testimony and bring with him the books and records requested in the summonses served in this matter on October 20, 1999." *Id.* This Agreed Order ended any challenge to the enforceability or procedural regularity of the October 1999 summonses, and the Court finds that the summonses are enforceable.[2]

Mr. Kennedy, as trustee for the trusts, met with an IRS agent on May 22, 2000 in an attempt to further comply with the October 1999 summonses. At the meeting, Mr. Kennedy refused to produce any additional documents and he refused to answer questions posed by the IRS agent regarding the source of income to the trusts. In refusing to answer, Mr. Kennedy asserted a right against self-incrimination under the Fifth Amendment to the United States Constitution.

On June 12, 2000, the government filed a motion with the Court asking the Court to issue an order requiring Mr. Kennedy to show cause why he should not be held in contempt of the May 2, 2000 Agreed Order. *See* Doc. No. 14. The Court set the government's motion for hearing on August 1, 2000. On July 26, 2000, Mr. Kennedy filed his response to the government's motion, and a "Motion to Dismiss Petition to Enforce Internal Revenue Service Summons." *See* Doc. No. 16.

At the August 1st hearing, the government conceded that it was not actually

---

**1.** Copies of the summonses are attached as Exhibits "A" and "B" to the Declaration of Tina B. Twilley. *See* Doc. No. 4.

**2.** This Court has the jurisdiction and power to enforce the IRS summons at issue pursuant to 26 U.S.C. §§ 7402, 7604 and 28 U.S.C. § 1340. The October 1999 summonses were issued in good faith for a congressionally authorized purpose—to determine the trusts' income tax liability for 1997. The summonses seek information relevant to this congression-

ally authorized purpose. The information requested by the summonses was not already in the IRS' possession. The IRS complied with the service requirements for a summons set out in 26 U.S.C. § 7603. The summonses are, therefore, enforceable by the IRS. *See United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); and *United States v. LaSalle National Bank,* 437 U.S. 298, 313–14, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

seeking a contempt citation from the Court at this time. Rather, the government is simply seeking to compel Mr. Kennedy's responses to the summonses over Mr. Kennedy's Fifth Amendment assertions. Mr. Kennedy also admitted that, although his response to the government's motion was alternatively styled a motion to dismiss, his intention was merely to respond to the government's motion and lay the foundation for the Fifth Amendment assertions he made at the May 22nd meeting with the IRS. The Court construes the government's motion as a motion to compel further testimony, and the Court construes Mr. Kennedy's motion as a response to the government's motion. Thus, the only issue before the Court is the validity of Mr. Kennedy's Fifth Amendment assertions.

## II. THE FIFTH AMENDMENT

### A. DOCUMENTS REQUESTED BY THE SUMMONSES

The IRS is currently trying to compel the production of the following documents: a complete copy of the trusts' governing instruments (e.g., Trust Document or Indenture), all minutes of the trusts from inception, and all lease agreements entered into or in effect between April 19, 1997 and December 31, 1997. The IRS has requested these documents from Mr. Kennedy as the trustee of the trusts.

1. **The Contents of the Documents Requested by the IRS Are Not Protected by the Fifth Amendment's Privilege Against Self–Incrimination.**

■ Collective entities, such as the trusts in this case, do not have a Fifth Amendment privilege against self-incrimination. The Fifth Amendment's privilege against self-incrimination is a personal privilege belonging only to natural persons. *Braswell v. United States*, 487 U.S. 99, 102–103, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). *See also In re: Grand Jury Subpoena*, 973 F.2d 45, 48–51 (1st Cir.1992);

and *In re: Grand Jury Proceedings*, 633 F.2d 754, 756–57 (9th Cir.1980) (both recognizing trusts as collective entities). The IRS has requested documents belonging to a trust, not a person. Thus, the Fifth Amendment is not applicable to the documents requested by the IRS in this case.

■ Even if the Fifth Amendment applied to the documents requested in this case, the privilege could not be applied to prevent their production to the IRS. The Fifth Amendment prevents the government from compelling testimony that is incriminating. There are, therefore, three elements to a Fifth Amendment claim: the claimant must show (a) compulsion by the government, (b) that what is being compelled is testimonial in nature, and (c) that the compelled testimony would be incriminating or lead to evidence that would be incriminating. A request for production of documents usually fails to satisfy the first element—compulsion. "[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." *United States v. Hubbell*, 530 U.S. 27, 120 S.Ct. 2037, 2043, 147 L.Ed.2d 24 (2000) (citing *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)).

■ There is no evidence that the documents requested by the IRS were prepared pursuant to government compulsion. Rather, if they exist, they were voluntarily prepared as part of the ordinary course of the trusts' business. The trusts cannot, therefore, use the Fifth Amendment to shield from production the contents of the documents requested by the IRS.

2. **Mr. Kennedy's Act of Production, as the Trustee of the Trusts, Is Not Protected by the Fifth Amendment's Privilege Against Self–Incrimination.**

While the contents of documents are often not protected by the Fifth Amend-

ment's privilege against self-incrimination, the act of producing them may be. The Supreme Court has held that "the act of producing documents in response to a subpoena may have a compelled testimonial aspect." *Hubbell*, 120 S.Ct. at 2043. The act of production itself may implicitly communicate statements of fact. By producing documents in compliance with a subpoena, the witness would necessarily be admitting that the papers existed, were in his possession or control, and were authentic. *Id.* If these compelled testimony aspects of the act of production are personally incriminating, the party required to produce documents may be able to assert a personal Fifth Amendment privilege.

▮ In this case, however, Mr. Kennedy is not being asked to respond to the summonses individually, but as the trustee of the trusts. A representative of a collective entity, like the trusts in this case, may not invoke a personal Fifth Amendment privilege based on his act of producing documents which are within the custody or control of the entity, even if the documents would incriminate the representative. *Braswell*, 487 U.S. at 104–118, 108 S.Ct. 2284. *See also United States v. Natco Petroleum, Inc.*, No. 98–2025, 1999 WL 44064, at *2 (10th Cir. Feb.2, 1999); *In re: Trial Subpoena Duces Tecum*, 927 F.2d 244, 246–47 (6th Cir.1991); and *In re Grand Jury Witnesses*, 92 F.3d 710, 712 (8th Cir.1996). This is so because the representative's act of production is deemed to be an act of the entity, and not a personal act. *See In re Sealed Case*, 877 F.2d 83, 85–89 (D.C.Cir.1989). A representative may also not invoke the Fifth Amendment to refuse, if he is otherwise able, to identify and authenticate documents within the entity's control. *See Trial Subpoena*, 927 F.2d at 248–49; and *United States v. Medlin*, 986 F.2d 463, 467–68 (1993).

The Supreme Court stated the applicable principle most succinctly in *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944).

[I]ndividuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally.

*Id.* at 699, 64 S.Ct. 1248. Because the representative's act is an act of the entity, and not a personal act, the United States may make no evidentiary use of the act of production against the representative. *Braswell*, 487 U.S. at 118, 108 S.Ct. 2284. For example, in a criminal prosecution against the representative, the United States would not be able to introduce into evidence the fact that a subpoena for records within the entity's control was complied with by the representative. *Id.*

In this case, Mr. Kennedy's act of production will not be a personal act. Rather, as trustee for the trusts, Mr. Kennedy's act of production will be an act of the trusts. Because the trusts have no Fifth Amendment privileges, Mr. Kennedy's act of production, as trustee of the trusts, is not protected by the Fifth Amendment. However, should the government ever prosecute Mr. Kennedy personally, it will not be able to make any evidentiary use of Mr. Kennedy's act of production. *See Braswell*, 487 U.S. at 118, 108 S.Ct. 2284.

▮ Mr. Kennedy argues that because the IRS is investigating the trusts, the IRS must believe that the trusts are invalid. He argues, therefore, that the Court

should treat the trusts as if they do not exist and consider the documents being requested by the IRS to be personal documents belonging to Mr. Kennedy rather than documents belonging to the trusts. If the documents are personal documents belonging to Mr. Kennedy, Mr. Kennedy argues that he would then be able to assert a personal Fifth Amendment privilege because the testimonial aspects of his act of producing the documents could potentially incriminate him or lead to evidence that would incriminate him. The Court will, however, not engage in the fiction suggested by Mr. Kennedy.

At this point in the proceedings, there are two valid trusts and there has been no action, judicial or otherwise, invalidating the trusts. It is also not a forgone conclusion that the IRS' investigation of the trusts would result in the vitiation of the trusts. The IRS could determine that the trusts are valid trusts under state law, but that they do not qualify for certain tax treatment under federal law, resulting in tax liability for the trusts. The IRS has subpoenaed records from two trusts, and there has been no allegation by Mr. Kennedy that the trusts summoned do not exist or that he is not the trustee of the summoned trusts. If Mr. Kennedy is willing to stipulate that no trusts exist, the Court will consider his claim of a personal Fifth Amendment privilege based on his act of production.

## B. Testimony Requested by the Summonses

The IRS intends to take testimony from Mr. Kennedy regarding the source of income for the trusts and the nature and substantiation for certain deductions taken by the trusts. Mr. Kennedy has refused to answer questions of this type, asserting a Fifth Amendment privilege against self-incrimination. The government does not argue that Mr. Kennedy does not have a personal Fifth Amendment privilege in connection with testimony regarding the trusts' activities. Rather, the government argues that by responding, Mr. Kennedy does not face a substantial risk of self-incrimination.

■ The parties agree on the controlling law in this area. That is, the parties agree that to validly assert a Fifth Amendment privilege against self-incrimination, the claimant must be confronted with a substantial and real, and not merely a trifling, remote or imaginary, risk of incrimination. *See United States v. Apfelbaum,* 445 U.S. 115, 128, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980); *California v. Byers,* 402 U.S. 424, 429, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971); *Zicarelli v. New Jersey,* 406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); and *United States v. Schmidt,* 816 F.2d 1477, 1481 (10th Cir. 1987). The government argues that under the facts of this case, any risk of incrimination faced by Mr. Kennedy in giving testimony in response to the summonses is remote and speculative. The Court agrees. The Court finds that Mr. Kennedy has failed to demonstrate a specific threat of incrimination. Mr. Kennedy's arguments have alluded to vague and speculative risks of incrimination. The Court finds, therefore, that Mr. Kennedy does not face a substantial risk of incrimination by giving testimony about the trusts. Mr. Kennedy may not, therefore, assert the Fifth Amendment as a basis for refusing to give testimony in response to the October 1999 summonses.

## CONCLUSION

The Government's motion for order to show cause, characterized as a motion to compel, is **GRANTED.** [Doc. No. 14]. Respondent's motion to dismiss, characterized as a response to the government's motion to compel, is **DENIED.** [Doc. No. 16]. Mr. Kennedy may not validly assert the Fifth Amendment's privilege against self-incrimination as a basis for refusing to comply with the summonses issued by the IRS on October 20, 1999. Mr. Kennedy is directed to fully comply with the IRS sum-

monses within 45 days from the date this Order is filed.