VICTOR MARRERO, United States District Judge.
I. BACKGROUND
On March 11, 2015, Petitioner the United States of America ("Petitioner" or the "United States") filed a petition to enforce two Internal Revenue Service ("IRS") summonses (the "Summonses") against Respondent Natalio Fridman ("Respondent" or "Fridman"). (See"Petition," Dkt. No. 1.) The Summonses request various records and documents (the "Document Requests"), and were issued in connection with an IRS investigation into Fridman's tax liabilities for the tax year 2008. One of the Summonses was issued against Fridman in his individual capacity, and the other was issued against Fridman in his capacity as trustee of the David Marcelo Trust.
On November 25, 2015, the Court granted the Petition. (See"November 2 5 Order," Dkt. No. 2 8.) The Court determined that (1) Respondent's blanket invocation of the Fifth Amendment privilege against self-incrimination was insufficient to establish his entitlement to that protection; (2) even if Respondent's invocation of the Fifth Amendment had been sufficient, Respondent would have been required to produce the documents requested by the Summonses because of certain exceptions to the Fifth Amendment act-of-production privilege; and (3) the United States satisfied its burden and demonstrated that it was entitled to enforcement of the Summonses. (See id. at 3-4.) The Court therefore *263 ordered Respondent to "produce all documents in his possession, custody, or control that are responsive to the Summonses' document requests" and to "appear for an interview ... to provide testimony identifying and/or authenticating documents produced by Respondent in his capacity as a representative of a trust." (Id. at 4.)
Fridman appealed, and on December 13, 2016, the Court of Appeals for the Second Circuit issued a summary order vacating and remanding the November 25 Order. (See"Appellate Order," Dkt. No. 33.) While the Second Circuit found that the Court did not err in determining that the United States satisfied its burden of showing the relevance of the requested documents (see id. at 3), the appellate court concluded that the record was insufficiently developed for it to review the Court's determination regarding the applicability of the Fifth Amendment act-of-production privilege (see id. at 4). The Second Circuit directed the Court to "(1) provide a record sufficient for appellate review in determining whether Fridman properly invoked his Fifth Amendment act of production privilege; and (2) identify any applicable exceptions to the act of production privilege for each document request and determine the period of time for which the exception applies." (Id. at 5.)
On April 28, 2017, Fridman filed a brief on remand objecting to enforcement of the Summonses. (See"Respondent Brief," Dkt. No. 39.) He asserts his Fifth Amendment privilege as the basis for his objection to the Document Requests that remain open, namely, Document Request Nos. 1-4, 7-17, and 20. (See id. at 2, 8.) Fridman argues that no exception to the Fifth Amendment act-of-production privilege -- i.e., the required records doctrine, the foregone conclusion doctrine, and the collective entity doctrine -- applies to these Document Requests, thus meaning that he cannot be compelled to produce the documents. (See id. at 8-20.) Additionally, Fridman argues that he does not possess or have control of documents responsive to Document Request Nos. 3, 8, 9, and 10. (See id. at 21-23.) Finally, Fridman argues that in camera review of responsive documents, as contemplated by the Second Circuit, would be inappropriate and unnecessary. (See id. at 24-25.)
On June 23, 2017, the United States filed a brief on remand in support of its petition to enforce the Summonses and requesting oral argument. (See"Petitioner Brief," Dkt. No. 42.) Petitioner asserts that Respondent has conceded that the required records exception applies to certain Document Requests, and that Fridman has produced documents responsive to Document Request Nos. 4 and 13 that fall within that exception. (See id. at 7 n.5.) Petitioner argues that the Fifth Amendment act-of-production privilege does not protect Fridman from producing documents and providing testimony in response to the other Document Requests because one or both of the other exceptions -- the collective entity doctrine and/or the foregone conclusion doctrine -- apply to the requests. (See id. at 7-24.) In support of its arguments, Petitioner filed the declarations of Theresa Alvarez[1] ("Alvarez Declaration," Dkt. No. 43), Tina B. Masuda[2] *264 (Dkt. No. 44), and John M. Gillies[3] (Dkt. No. 45).
On July 28, 2017, Respondent filed a reply memorandum. ("Respondent Reply," Dkt. No. 51.) In addition to reasserting his Fifth Amendment privilege against self-incrimination, Respondent argues that the United States cannot expand the scope of the Summonses to cover documents held by Respondent as custodian of any corporation or as trustee of any trust other than the David Marcelo Trust. (See id. at 1-3.) On August 18, 2017, Petitioner filed a sur-reply memorandum. ("Petitioner Sur-Reply," Dkt. No. 53.) Petitioner not only counters Respondent's objections relating to the foregone conclusion doctrine and the collective entity doctrine, but also argues that the scope of the Summonses is not limited by the capacity in which Fridman was served. (See id. at 1-5.)
On September 25, 2018, the United States sent the Court a letter informing it of a recent decision in another case in this district -- United States v. Glaister, et al., No. 18-mc-213 -- regarding enforcement of IRS summonses. (See"September 25 Letter," Dkt. No. 56.) On October 3, 2018, Fridrman responded to the September 25 Letter, arguing that Glaister is inapposite to the present case because it involved "business entities," not "domestic trusts" like the David Marcelo Trust at issue in this case. (See"October 3 Letter," Dkt. No. 59.) On October 15, 2018, the United States responded to the October 3 Letter, arguing that the collective entity doctrine does not distinguish between domestic and business trusts. (See"October 15 Letter," Dkt. No. 61.)
The Court previously determined that the United States has made a sufficient showing that the documents sought by the Summonses are relevant to the IRS investigation:
The Government satisfied its burden under United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), by demonstrating that it is entitled to enforcement of its Summonses with regard to its document requests as modified and/or clarified ... and with regard to testimony ... identifying and/or authenticating documents produced by Respondent in his capacity as a representative of a trust.
(November 25 Order at 4.) Because the Second Circuit found no error in the Court's prior determination that the United States satisfied its burden of showing the relevance of the requested documents (see Appellate Order at 3), the Court now considers only the questions of whether Respondent properly invoked his Fifth Amendment privilege and, if so, whether any doctrine applies such that Respondent is nevertheless required to respond to the Summonses.
For the following reasons, the Petition to Enforce the Summonses is GRANTED.
II. LEGAL STANDARD
The Fifth Amendment provides that "[n]o person ... shall be [c]ompelled in any criminal case to be a [w]itness against himself." U.S. Const. Amend. V. The privilege against self-incrimination is not absolute: "the Fifth Amendment does not independently proscribe the compelled *265 production of every sort of incriminating evidence but applies only when the accused is compelled to make a [t]estimonial [c]ommunication that is incriminating." Fisher v. United States, 425 U.S. 391, 408, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).
The Supreme Court has recognized, however, that "[t]he act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced." Id. at 410, 96 S.Ct. 1569 ; see also United States v. Doe, 465 U.S. 605, 612, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) ("A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect."). Document production can communicate that (1) "documents responsive to a given subpoena exist," (2) "they are in the possession or control of the subpoenaed party," (3) "the documents provided in response to the subpoena are authentic," and (4) "the responding party-believes that the documents produced are those described in the subpoena." United States v. Hubbell, 167 F.3d 552, 567-68 (D.C. Cir. 1999), aff'd, 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) ; see also United States v. Greenfield, No. 14 MC 350, 2015 WL 11622481, at *2 (S.D.N.Y. Feb. 11, 2015). But there are exceptions to the act-of-production privilege, including the three exceptions raised by the parties here: the required records doctrine, the foregone conclusion doctrine, and the collective entity doctrine.
Under the required records doctrine, the act-of-production privilege cannot be invoked to shield from production "records required by law to be kept." Shapiro v. United States, 335 U.S. 1, 17, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). "[A] person whose records are required to be kept by law has no Fifth Amendment protection against self-incrimination when these records are directed to be produced." In re Doe, 711 F.2d 1187, 1191 (2d Cir. 1983). The Second Circuit has specifically held that the required records exception applies to records required to be kept under the Bank Secrecy Act 1970 ("BSA"), 31 U.S.C. §§ 5311 - 5332. See In re Grand Jury Subpoena Dated Feb. 2, 2012, 741 F.3d 339, 347, 352-53 (2d Cir. 2013) ("The BSA's requirements at issue here are 'essentially regulatory,' the subpoenaed records are 'customarily kept,' and the records have 'public aspects' sufficient to render the [required records] exception applicable.").
A second exception to the act-of-production privilege is the foregone conclusion doctrine. The Supreme Court has held that the Fifth Amendment privilege cannot be invoked when "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." Fisher, 425 U.S. at 411, 96 S.Ct. 1569. In order for the foregone conclusion doctrine to apply, the United States must "demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents." In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, 1 F.3d 87, 93 (2d Cir. 1993). To satisfy this standard, "the Government need not demonstrate perfect knowledge of each specific responsive document covered by the Summons," but it "must know, and not merely infer, that the sought documents exist, that they are under the control of defendant, and that they are authentic." United States v. Greenfield, 831 F.3d 106, 116-17 (2d Cir. 2016). In other words, "the 'reasonable particularity' standard does not reduce the level of certainty with which the Government must establish knowledge, but rather the extent to which that certainty relates to each document responsive to the summons."
*266 Id. at 117. In regards to timing, the "appropriate moment for the foregone-conclusion analysis is when the relevant summons was issued." Id. at 124. If the Government can demonstrate knowledge at the time the summons was issued, a court should consider four factors in determining whether it is "appropriate to infer defendant's continued possession of certain records": "(1) 'the nature of the documents,' (2) 'the nature of the business to which the documents pertained,' (3) 'the absence of any indication that the documents were transferred to someone else or were destroyed,' and (4) 'the ... time period ... between the date as of which possession was shown and the date of the ensuing IRS summons.' " Id. at 125-26 (quoting United States v. Rue, 819 F.2d 1488 (8th Cir. 1987) ).
The third and final exception addressed by the parties is the collective entity doctrine. Under this doctrine, "an individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." Bellis v. United States, 417 U.S. 85, 88, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) ; accord Braswell v. United States, 487 U.S. 99, 110, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) ("[T]he custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation -- which of course possesses no such privilege."); In re Grand Jury Subpoena Issued June 18, 2009, 593 F.3d 155, 158 (2d Cir. 2010) ("[T]he custodian of corporate records, who acts as a representative of the corporation, cannot refuse to produce corporate records on Fifth Amendment grounds."). A collective entity is "an organization which is recognized as an independent entity apart from its individual members." Bellis, 417 U.S. at 92, 94 S.Ct. 2179 ; see also Subpoena Issued June 18, 2009, 593 F.3d at 157-59. The applicability of the collective entity doctrine to the instant case therefore hinges on whether a trust is a collective entity. While many circuits have held that trusts are collective entities,[4] both Respondent and Petitioner acknowledge that it is an open question in the Second Circuit. (See Respondent Brief at 5; Petitioner Brief at 9.)
However, a recent case out of the United States District Court for the Southern District of New York also held that trusts are collective entities. In United States v. Glaister, the Honorable Paul A. Engelmayer considered a petition by the IRS to enforce summonses issued to Sarah and John Glaister (the "Glaisters"). Applying the collective entity rule, Judge Engelmayer overruled the Glaisters' assertion of their Fifth Amendment privilege over records concerning "foreign business entities or trusts that Respondents hold in their representative capacities as custodians for foreign business entities or trusts." United States v. Glaister, No. 18-mc-213, Order at 3 (S.D.N.Y. July 11, 2018) (ECF No. 18).
The collective entity doctrine is limited to documents, not oral testimony. Thus, even if a person is required to produce the records of a collective entity, he "cannot lawfully be compelled ... to condemn himself by his own oral testimony." Braswell, 487 U.S. at 114, 108 S.Ct. 2284. This limitation does not mean that a custodian *267 of a collective entity's records is shielded from all questioning. Rather, "[r]equiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself," and is therefore permissible. Id.; accord Curcio v. United States, 354 U.S. 118, 123-125, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957).
III. DISCUSSION
A. The Fifth Amendment Privilege Against Self-Incrimination
The Court originally determined that "Respondent's blanket invocation of the Fifth Amendment protection against self-incrimination" was "insufficient to establish entitlement to that protection." (November 25 Order at 3.) The Second Circuit, however, concluded that the record was insufficiently developed for appellate review, and therefore directed the Court to "provide a record sufficient for appellate review in determining whether Fridman properly invoked his Fifth Amendment act of production privilege." (Appellate Order at 5.)
On remand, Respondent objects to the production of documents responsive to the open Document Requests. Fridman specifically asserts his Fifth Amendment privilege in response to each of the contested Document Requests. (See Respondent Brief at 8, Exhibit A.) Respondent makes the following objections:
1. Respondent invokes his Fifth Amendment privilege with respect to the non-trust-related documents contemplated by Document Request Nos. 1, 2, 4, and 7 (see id. at 9-14);
2. Respondent invokes his Fifth Amendment privilege with respect to the trust-related documents contemplated by Document Request Nos. 4, 11, 12, 13, 14, 15, 16, 17, and 20, and argues that the collective entity exception is inapplicable to trusts (see id. at 14-20)
3. Respondent invokes his Fifth Amendment privilege with respect to any documents he holds as trustee of any trusts other than the David Marcelo Trust (see id. at 20); and
4. Respondent contends that he does not have possession or control over the documents contemplated by Document Requests Nos. 3, 8, 9, and 10 (see id. at 21-23).
On remand, the United States does not contest the fact that Respondent appropriately invoked his Fifth Amendment act-of-production privilege. (Petitioner Brief at 2.) But the United States argues that Fridman's invocation of the Fifth Amendment fails because the collective entity and/or foregone conclusion doctrines apply to the Document Requests. (See id. at 8.) Specifically, Petitioner argues that Respondent must produce the corporate and trust-related documents contemplated by Document Request Nos. 3, 4, 7, 10-17, and 20 because the collective entity exception is applicable. (See id. at 9-14.) Moreover, Petitioner argues that Respondent must produce the documents contemplated by Document Request Nos. 1-4, 7-9, and 12 because the foregone conclusion doctrine forecloses his invocation of the Fifth Amendment privilege. (See id. at 16-17.)
B. Required Records Doctrine
For each of the Document Requests for which Fridman invokes his Fifth Amendment privilege against self-incrimination, Respondent argues either that the required records doctrine is inapplicable or that he has already provided responsive documents to the extent required by the doctrine. (See Respondent Brief at 9-20.) In opposition, the United States does not *268 rely on the required records exception in its arguments for enforcing any of the Document Requests. Instead, the United States notes that "Fridman has conceded that this exception applies and has represented that he has produced all documents responsive to the [Document Requests] in his possession or control that fall within the exception." (Petitioner Brief at 7 n.5.) Since there is no live controversy regarding the applicability of the required records doctrine, the Court does not consider it at this stage.
C. Foregone Conclusion Doctrine
The Second Circuit directed the Court on remand to "evaluate whether the foregone conclusion exception applies in light of [the] decision in United States v. Greenfield, 831 F.3d 106 (2d Cir. 2016)." (Appellate Order at 5 n.1.) In response to Document Request Nos. 1, 2, 4, and 7, Fridman invokes his Fifth Amendment privilege against self-incrimination and argues that the foregone conclusion doctrine is inapplicable. (See Respondent Brief at 9-20.) Specifically, Respondent argues that the foregone conclusion doctrine is inapplicable because the United States "has not identified with reasonable particularity that it knows of the existence and location of the summoned documents" (id. at 11) and/or the United States has not identified with reasonable particularity the accounts for which it seeks information (see id. at 9-14). In opposition, Petitioner argues that Fridman must produce documents covered by the foregone conclusion doctrine because the United States knows with "reasonable particularity" of the existence and location of the requested documents. (See Petitioner Brief at 14-24.) The Court considers each Document Request in turn.
1. Document Request No. 1
Document Request No. 1 seeks the following information: "For all of the foreign bank account[s] over which you have signatory authority since 1999, please list the opening date and closing date of each." The United States has modified this Document Request to mean "existing documents sufficient to show" the opening and closing dates for "each of the Known Accounts" that are listed in Exhibit B. (Petitioner Brief at Exhibits A & B.) For each of the Known Accounts, the United States has identified the name of the account holder, the bank, the country, and the account number (provided to the Court in redacted form). (See id. at Exhibit B.)
Respondent asserts his Fifth Amendment privilege against self-incrimination, arguing that producing the documents contemplated by Document Request No. 1 would "go[ ] beyond the normal implicit testimonial aspects of the act of production, by communicating to the IRS that the produced documents comprise the relevant list." (Respondent Brief at 10.) This argument ignores Petitioner's modification to the request. As modified, Document Request No. 1 seeks existing documents sufficient to show the opening and closing dates for each of the Known Accounts. Since the United States has identified the accounts for which it seeks documents (i.e., "the relevant list"), Respondent will not be forced "to use his discretion in selecting ... the responsive documents," and he will therefore not "tacitly provid[e] identifying information." Greenfield, 831 F.3d at 118 (internal quotation marks omitted).
Respondent further argues that the foregone conclusion doctrine is inapplicable to Document Request No. 1 "because the government has not identified with reasonable particularity that it knows of the existence and location of the summoned documents." (Respondent Brief at 11.) The Court is not persuaded by this argument. The United States has provided the name *269 of the account holder, the bank, the country, and the account number for each of the Known Accounts. The United States knew of the existence of these bank accounts at the time it served the Summonses. (See Alvarez Declaration ¶ 5.) Because the "appropriate moment for the foregone-conclusion analysis is when the relevant summons was issued," the Court is satisfied that the United States knew of the existence, location, and authenticity of the requested documents at the relevant time, as required by the foregone conclusion doctrine. Greenfield, 831 F.3d at 124.
The Court therefore finds that the foregone conclusion exception is applicable to Document Request No. 1, and Respondent must produce the documents contemplated by this request (as modified).
2. Document Request No. 2
Document Request No. 2 seeks "the 2006 & 2007 bank statements for all your foreign bank accounts." Respondent argues that the foregone conclusion doctrine does not apply to Document Request No. 2 "[b]ecause the IRS has not even identified the accounts for which it seeks information." (Respondent Brief at 12.) In opposition, the United States seems to imply that Document Request No. 2 seeks "all 2006 and 2007 statements for each foreign account" included in the list of "the Known Accounts." (Petitioner Brief at 16-17.) Indeed, Petitioner's Exhibit A describes this request as one for "[a]ll responsive documents for each of the Known Accounts." (Id. at Exhibit A.)
To the extent that Document Request No. 2 seeks records for accounts that the United States has not identified, the Court agrees with Respondent that the foregone conclusion doctrine does not apply to the request. However, to the extent that Document Request No. 2 seeks records for those foreign bank accounts included in the list of Known Accounts, the Court finds -- for the same reasons described supra Part III.C.1 -- that the foregone conclusion exception is applicable to Document Request No. 2. Respondent must therefore produce the documents contemplated by this Request.
3. Document Request No. 4
Document Request No. 4 seeks the following information: "All bank statements and account opening documents, including but not limited to, Know Your Customer Account information including signature cards, opening deposit slips, passport copies, certificate of beneficial ownership, letters of reference, certificate of clean funds and/or other source of funds documentation for the following accounts from opening date to 1/31/2009: UBS 29, Credit Suisse 3, Leumi Bank 49, Leumi Bank 02, Safra 37, HSBC 15, Republic National Bank of New York (Suisse) S.A." Respondent argues that the foregone conclusion doctrine is inapplicable to Document Request No. 4 because "the Summons does not identify with reasonable particularity the documents it seeks" and "the [G]overnment has failed to show with reasonable particularity that it can establish Respondent's current possession or control of the requested documents." (Respondent Brief at 13.)
The Court disagrees. As noted by Petitioner, the documents contemplated by Document Request No. 4 are the types of documents "possessed by the owners of financial accounts as a matter of course." Greenfield, 831 F.3d at 121 ; see also United States v. Norwood, 420 F.3d 888, 895 (8th Cir. 2005) ("The summons seeks records such as account applications, periodic account statements, and charge receipts, all of which are possessed by the owners of financial accounts as a matter of course."). In fact, Document Request No. 4 -- which *270 provides examples of the types of records it seeks --is more specific than the request at issue in Greenfield, which "required Greenfield to produce 'all documents' in his possession for each bank account." 831 F.3d at 112-13.
Moreover, the case to which Respondent points in support of his argument, United States v. Shadley, 106 A.F.T.R.2d 2010-5440 (E.D. Cal. 2010), is inapposite. This non-binding case conflicts with controlling precedent in the Second Circuit. The Shadley Court determined that the respondent was not required to produce requested documents because "petitioners have not shown that they were aware of the existence or contents of respondent's checkbook deposit slips or the authenticity of those slips." 106 A.F.T.R.2d 2010-5440. But the Second Circuit in Greenfield applied the "reasonably particularity" standard, and cited with approval the Eighth Circuit's Norwood decision. Greenfield, 831 F.3d at 119-121 ("Though the Government does not have specific knowledge of every document that is responsive to the Summons, such specific knowledge exceeds what is required under a 'reasonable particularity' standard."). The Court's approach now is guided by that Second Circuit precedent.
As described supra Part III.C.1, the United States has demonstrated that it knew of the existence, location, and authenticity of the requested documents for the Known Accounts at the relevant time, as required by the foregone conclusion doctrine. The Court therefore finds that the foregone conclusion exception is applicable to Document Request No. 4, and Respondent must produce the documents contemplated by this Request as modified.
4. Document Request No. 7
Document Request No. 7 seeks the following information: "Bank documents including but not limited to cancelled checks, wire transfer instructions, wire transfer slips, deposit slips to show the flow of the following funds, the account numbers and account holders' names for the Citibank accounts and any other bank accounts: [transactions on 7/26/04, 8/30/03, 9/28/13, 1/31/08, 2/28/10 moving money from HSBC Acct 10066115 to Citibank-NY or 'Unknown']." This request has been modified to reflect that "2003" and "2013" should be read as "2004." (See Petitioner Brief at Exhibit A.) Respondent argues that the foregone conclusion doctrine is inapplicable to Document Request No. 7 because "the government has made no showing that it knows with reasonable particularity the question it asks." (Respondent Brief at 13-14.) In its brief, the United States clarifies that Document Request No. 7 seeks "records sufficient to show several known transfers of funds between the HSBC account and an unknown Citibank account on particular dates in 2004, 2008, and 2010." (Petitioner Brief at 17, 19-20.)
For the same reasons as discussed supra Part III.C.1, the Court is persuaded that the United States knew of the existence, location, and authenticity of the requested documents at the relevant time, as required by the foregone conclusion doctrine. The Court therefore finds that the foregone conclusion exception is applicable to Document Request No. 7, and Respondent must produce the documents contemplated by this Request as modified.
D. Collective Entity Doctrine
Petitioner argues that Respondent is obligated to produce all trust-related documents contemplated by the Document Requests because trusts are collective entities, thereby making the collective entity doctrine applicable in this case. Respondent concedes that "if the David Marcelo *271 Trust is a collective entity, he must produce the Document Requests to the extent that such requests are for documents belonging to the David Marcelo Trust, because while individuals have a Fifth Amendment privilege, a collective entity does not." (Respondent Brief at 5.) Respondent argues, however, that "the David Marcelo Trust, a traditional trust governed by New York law, is not a collective entity, and Respondent, as a trustee of the trust, is not the custodian of an entity." (Id. at 6.)
The Court is persuaded by the reasoning of the various courts of appeals that have concluded that trusts are collective entities. See In re Grand Jury Subpoena, 973 F.2d 45, 47-50 (1st Cir. 1992) (finding that a Massachusetts nominee trust "has a sufficiently 'established institutional identity independent of its individual [constituents]' to fall within the definition of collective entity") (internal citation omitted); Watson v. Comm'r, 690 F.2d 429, 431 (5th Cir. 1982) ("The [F]ifth [A]mendment privilege is purely personal. ... It does not extend to the documents of an artificial entity, such as a trust, held by an individual in a representative capacity."); United States v. Harrison, 653 F.2d 359, 361-62 (8th Cir. 1981) ("The Trust is a formally organized entity, legally distinct from its trustees .... In our view, those who form a separate business entity, hold that entity out as distinct and apart from the individuals involved, and file separate tax returns on behalf of the entity, are estopped from denying the existence and viability of that entity for Fifth Amendment purposes."); In re Grand Jury Proceedings (Hutchinson), 633 F.2d 754, 756-57 (9th Cir. 1980) ("The trust may possess certain characteristics that affect the way it is treated for federal tax purposes, but its treatment for tax purposes is largely irrelevant to the determination of whether it is an organization separate and apart from its creator.").
The David Marcelo Trust is similar to the trusts at issue in these cases in that the David Marcelo Trust has an "established institutional identity independent of its individual [constituents]." Bellis, 417 U.S. at 95, 94 S.Ct. 2179. The David Marcelo Trust is similar to the nominee trust at issue in In re Grand Jury Subpoena because "it cannot be doubted in general that" both trusts are "held out to the world as being separate and apart from [their] beneficiaries." 973 F.2d at 50. Similarly, the David Marcelo Trust (see Petitioner Brief at 13), like the trust in Harrison, "is a formally organized entity, legally distinct from its trustees." 653 F.2d at 361. And like the trust at issue in Hutchinson, the David Marcelo Trust has other trustees (see Petitioner Brief at 13), "all of whom had fiduciary duties to the trust and its beneficiaries." Hutchinson, 633 F.2d at 757. Furthermore, the David Marcelo Trust (see Petitioner Brief at 13), again like the trust in Hutchinson, has "independent functions" separate from its trustees and beneficiaries. 633 F.2d at 757.
The Court's conclusion is further informed by the reasoning of Judge Engelmayer in United States v. Glaister. Judge Engelmayer determined that, "[i]nsofar as the subpoena seeks information from the Glaisters in their representative capacities as custodians for corporate entities, the Court ... orders that those records be produced and finds no viable Fifth Amendment privilege that attaches to the Glaisters individually." Transcript at 51:10-17, 55:10-15, United States v. Glaister (S.D.N.Y. June 18, 2018) (No. 18-mc-213) ("This order applies only, of course, to business entities, which the Glaisters were representatives of at the time of the subpoena's service."); see also United States v. Glaister, No. 18-mc-213, Order at 3 *272 (S.D.N.Y. July 11, 2018) (ECF No. 18) (overruling Respondents' invocation of the Fifth Amendment privilege with respect to "any records concerning foreign business entities or trusts that Respondents hold in their representative capacities as custodians for foreign business entities or trusts").
The Court therefore finds that the David Marcelo Trust is a collective entity. As a result, Respondent must produce all trust-related documents contemplated by Document Request Nos. 1-4, 7, 10-17, and 20.
E. Oral Testimony
Petitioner requests that the Court order Respondent to appear for an interview with the IRS to provide oral testimony identifying and/or authenticating any documents produced by Respondent in his capacity as a representative of a collective entity. (See Petition ¶ 5.) In the event the Court agrees with Petitioner, Respondent argues that the United States should be precluded from using Respondent's oral testimony against him. (See Respondent Brief at 23-24.) Specifically, Respondent requests that the Court "include a limitation protecting Respondent's Fifth Amendment rights by preventing the United States from using any oral testimony by Respondent in any criminal proceeding against Respondent." (Id. ) Petitioner counters that "there is no need for this Court to prematurely address this potential future issue in its decision in this case." (Petitioner Brief at 24-25.)
The law clearly requires the custodian of the records of a collective entity to provide oral testimony identifying and/or authenticating any documents produced in such a capacity. See Braswell, 487 U.S. at 114, 108 S.Ct. 2284 ; Curcio, 354 U.S. at 123-125, 77 S.Ct. 1145. Since the Court has determined that Respondent must produce the documents he holds as trustee of the David Marcelo Trust, the Court also finds that he must appear for an interview to provide oral testimony identifying and/or authenticating any such documents. Furthermore, the Court declines as premature Respondent's request for a limiting instruction.
F. Respondent's Lack of Possession or Control (and the Scope of the Summonses)
The final dispute between the parties relates to Document Request Nos. 3, 8, 9, and 10. For each of these requests, Respondent argues that he lacks possession or control of the requested documents. The Court considers each Document Request in turn.
1. Document Request No. 3
Document Request No. 3 seeks the following information: "All bank statements and all the account opening documents, including but not limited to, Know Your Customer Account information including signature cards, opening deposit slips, passport copies, certificate of beneficial ownership, letters of reference, certificate of clean funds and/or other source of funds documentation for accounts held under the name of the [listed] Entities from opening date to 1/31/2009."[5] Respondent contends that he "does not have possession and control of any documents responsive to Document Request No. 3" in either his individual capacity or his capacity as trustee of the David Marcelo Trust. (Respondent Brief at 21-22.) While Respondent concedes that the entities listed in Document *273 Request No. 3 "appear to be collective entities," he notes that "[n]either of the Summonses served were served on Respondent in his capacity as custodian of records for any of these entities." (Id. ) According to Respondent, the United States must therefore subpoena either the entities listed in the Document Request or Fridman in his capacity as custodian of the entities. Respondent further develops this argument in his reply brief, arguing that the United States inappropriately seeks to expand the scope of the Summonses to cover documents held by Respondent "in his capacity as custodian of certain listed corporations." (Respondent Reply at 1, 5-7.)
Petitioner objects to this characterization of the Summonses, arguing that the capacity in which Respondent was served does not affect the scope of the Summonses. (See Petitioner Sur-Reply at 1-4.) Petitioner further contends that the IRS was not required to serve Fridman with separate summonses. (See id. at 2.)
In support of his argument, Respondent relies principally on Securities and Exchange Commission v. Forster, 147 F.Supp.3d 223 (S.D.N.Y. 2015). In that case, the Securities and Exchange Commission ("SEC") sought enforcement of a subpoena served on an individual "in his personal capacity and not as the custodian [of] records for the listed companies" -- a distinction that the court found to be "significant." Id. at 231. Based on this distinction, the court found that "the SEC cannot compel [the individual] in his personal capacity to produce any documents simply because they relate to the four named companies." Id. However, a later case -- In re Cinque Terre Financial Group Ltd., No. 16 CV 4774-LTS, 2016 WL 6952349 (S.D.N.Y. Nov. 28, 2016) -- calls into question the scope of Forster. In that case, the Honorable Laura Taylor Swain noted that "[t]he Forster Court did not ... specifically hold that a subpoena served on an individual who may be in possession of material in multiple capacities is void unless it specifies each such capacity." In re Cinque Terre, 2016 WL 6952349, at *4.
The Court agrees with Judge Swain that "a subpoena addressed to the individual" is not "invalid insofar as it may seek information the individual holds as a custodian rather than as an individual." Id. Here, Respondent's argument regarding the manner in which the Summonses were served emphasizes form over substance. Regardless of the capacity in which Fridman was served, the result is the same: Respondent is required to produce documents responsive to Document Request No. 3 to the extent that he possesses such documents in his individual capacity or his capacity as the custodian of a collective entity, including the corporations listed in the Document Request. Requiring the IRS to issue additional summonses to Fridman in his capacity as custodian of the listed corporations would add duplicative administrative steps to this process. The Court declines to do so here.
Thus, to the extent that Respondent possesses -- either in his individual capacity or his capacity as custodian of a collective entity -- any of the records contemplated by Document Request No. 3, he must produce them.
2. Document Request Nos. 8 and 9
Document Request No. 8 seeks "[a]ll account opening documents, including but not limited to Customer Profile and signature card for Citibank Account 50." Document Request No. 9 seeks "[t]he bank statements for Acct 50 from 12/1/03 to 1/31/09." In its brief, the United States describes these requests as seeking "the U.S. Citibank Account's opening documents and statements from December 1, *274 2003, to January 31, 2009." (Petitioner Brief at 17.) Respondent argues that he is "not in possession or control of these documents" because the referenced account belongs to third party. (Respondent Brief at 23.) Nevertheless, and "[a]lthough this account is in the name of Fridman's son and wife," Petitioner argues that "the IRS reasonably believes that Fridman has control over its records." (Petitioner Brief at 21.)
As discussed supra Part III.D, Respondent must produce any responsive documents that he holds as trustee of the David Marcelo Trust. Thus, to the extent that Respondent possesses as trustee of the David Marcelo Trust any of the records contemplated by Document Request Nos. 8 and 9, he must produce them.
3. Document Request No. 10
Document Request No. 10 seeks a "[b]ank statement that shows Ms. Golda Kipersmit's interest in the Bank of NY as mentioned in Schedule A of the 1990 Trust Agreement." Respondent argues that he is "not in possession or control of these documents" because the referenced account belongs to a third party. (Respondent Brief at 23.) Petitioner argues that Respondent must produce the documents requested because the documents constitute the records of the David Marcelo Trust, a collective entity.
As discussed supra Part III.D, Respondent must produce any responsive documents that he holds as trustee of the David Marcelo Trust. Thus, to the extent that Respondent possesses any trust-related records that are responsive to Document Request No. 10, he must produce them.
IV. ORDER
Accordingly, it is hereby
ORDERED that the Petition of the United States to Enforce Internal Revenue Service ("IRS") Summonses (Dkt. No. 1) seeking documents and records (the "Document Requests") is GRANTED .
It is further ORDERED that Respondent Natalio Fridman's invocation of the Fifth Amendment protection against self-incrimination in response to the Summonses does not justify failing to produce the documents requested by the Summonses because producing the documents falls under the foregone conclusion doctrine and/or the collective entity doctrine exceptions to the Fifth Amendment privilege.
It is furthered ORDERED that Respondent must produce all documents in his possession, custody, or control that are responsive to the outstanding Document Requests in the Summonses as modified and/or clarified above, and it is further
ORDERED that Respondent must appear for an interview to be scheduled by the IRS to provide testimony identifying and/or authenticating documents produced by Respondent in his capacity as a representative of a trust.
SO ORDERED.

Ms. Alvarez is an IRS Revenue Agent who is conducting an investigation concerning Fridman's tax liabilities for the tax year 2008. (See Dkt. No. 43 ¶ 2.) Ms. Alvarez explains that the IRS knew -- at the time the IRS issued the Summonses -- of the existence of a number of accounts at various banks that Fridman controlled. (See id. ¶¶ 6-9.)

Ms. Masuda is an IRS Exchange of Information Program Manager. (See Dkt. No. 44 ¶ 1.) Ms. Masuda's declaration explains the various methods used by the United States to authenticate bank records from foreign countries. (See id. ¶¶ 3-40.)

Mr. Gillies is an Associate Director with the Office of International Affairs in the Criminal Division of the U.S. Department of Justice. (See Dkt. No. 45 ¶ 1.) Mr. Gillies's declaration explains how the United States can authenticate documents under the Mutual Legal Assistance Treaty between the United States and Argentina. (See id. ¶¶ 8-12.)

As both Respondent and Petitioner point out, the following circuits have held that trusts are collective entities: In re Grand Jury Subpoena, 973 F.2d 45 (1st Cir. 1992) ; Watson v. Comm'r, 690 F.2d 429 (5th Cir. 1982) ; United States v. Harrison, 653 F.2d 359 (8th Cir. 1981) ; In re Grand Jury Proceedings (Hutchinson), 633 F.2d 754 (9th Cir. 1980).

The entities are listed as Consist Teleinformatica Argentine, Consist Consultoria Systemast Repre Wanstst Systemar DE, Computacao CTDA, Consist France, Consist Asia Pacific, Mak Data System, and Consist International Inc.